OPINION
{¶ 1} Although originally placed on our accelerated calendar, we have elected, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry.
 {¶ 2} Defendant-Appellant, Charles Devanna, appeals an Auglaize County Court of Common Pleas judgment, sentencing him upon his conviction for operating a vehicle with a prohibited blood alcohol concentration. On appeal, Devanna contends that the trial court erred in overruling his motion to suppress because the officer lacked reasonable suspicion to perform an investigatory stop. Based on the following, we find that the trial court correctly found that the officer had reasonable suspicion to perform an investigatory stop, and we affirm the judgment of the trial court.
 {¶ 3} In October of 2003, at approximately 9:30 to 10:00 p.m., the Wapakoneta Police Department received a telephone call from Karen Hamerick and Justin Hurley. Hamerick and Hurley were both employees of a Captain D's Restaurant located in Wapakoneta, Ohio. Hurley made the initial contact with the police department; however, Hamerick informed the dispatcher that she had witnessed an individual in the drive-thru who appeared to be intoxicated. Hamerick stated that she believed that the individual was intoxicated because his eyes were extremely bloodshot, his speech was extremely slurred, he was slow to respond and there was a cooler in the vehicle containing beer cans. Hamerick also gave the dispatcher a description of the individual's car and a license plate number. After the individual left the drive-thru, Hamerick called the police department back to correct an error with the license plate number that had been given. Both Hamerick and Hurley identified themselves by name and gave the name of their employer and their employer's telephone number to the dispatcher. Additionally, Hamerick also filed a written police report later that night.
 {¶ 4} Based on the information given by Hurley and Hamerick, the dispatcher contacted Officer Zweibel by radio, informing him of a possible drunk driver who had recently been seen at Captain D's restaurant. He was given a description of the vehicle and the license plate number. Additionally, he was told that the driver was reported to have slurred speech and blood shot eyes. At the time Officer Zweibel received the dispatch he passed a car matching the description given by the dispatcher. He turned and followed the vehicle for approximately a quarter of a mile before initiating a traffic stop. Officer Zweibel did not observe any traffic violations prior to stopping the vehicle. After Officer Zweibel stopped Devanna, he was placed under arrest for operating a vehicle under the influence of alcohol. A later blood test showed that Devanna had a blood-alcohol concentration level of .215.
 {¶ 5} Subsequently, Devanna was charged with operating a vehicle under the influence of alcohol in violation of R.C.4511.19(A)(1). The citation was later amended to include a charge of operating a vehicle with a prohibited blood alcohol concentration in violation of R.C. 4511.19(A)(5). Devanna entered a plea of not guilty to both counts.
 {¶ 6} In January of 2004, Devanna filed a motion to suppress the evidence obtained from the stop, arguing that Hamerick's report was insufficient to provide Officer Zweibel a legal basis to conduct an investigatory stop of Devanna. Subsequently, a hearing on the matter was held. The State presented the testimony of Hamerick and Officer Zweibel. Both testified to the above events.
 {¶ 7} Following the hearing, Devanna's motion to suppress was denied. In April of 2004, Devanna entered a plea of no contest to the charge of operating a vehicle with a prohibited blood alcohol concentration. The charge of operating a vehicle under the influence of alcohol was dismissed. The trial court entered Devanna's conviction and sentenced him on that conviction. It is from this judgment Devanna appeals, presenting the following assignment of error for our review.
The trial court erred when it concluded that the arrestingofficer had reasonable suspicsion to make an investigatory stopof appellant's vehicle.
 {¶ 8} In the sole assignment of error, Devanna asserts that the trial court erred in concluding that Officer Zweibel had reasonable suspicion to make an investigatory stop of his vehicle. Specifically, Devanna argues that Hamerick's tip was that of an anonymous informant, who should be deemed comparatively unreliable, and that Hamerick's tip was insufficient to support a finding that Officer Zweibel had reasonable suspicion to make the investigatory stop.
 {¶ 9} Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. United Statesv. Martinez (C.A. 11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v. Carter
(1995), 72 Ohio St.3d 545, 552. As such, a reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. The reviewing court then applies the factual findings to the law regarding suppression of evidence. An appellate court reviews the trial court's application of the law de novo. State v. Anderson (1995), 100 Ohio App.3d 688, 691.
 {¶ 10} The United States Supreme Court has held that investigative stops and searches will be justified if the officer has a reasonable suspicion supported by articulable facts.Berkemer v. McCarty (1984), 468 U.S. 420, 439-440,104 S.Ct. 3138. A law enforcement officer does not need probable cause for arrest in order to make an investigative stop, but needs only specific and articulable facts warranting the officer's further investigation. State v. Brandenburg (1987), 41 Ohio App.3d 109,110. In determining whether reasonable suspicion exists, a reviewing court must look to the totality of the circumstances.State v. Andrews (1991), 57 Ohio St.3d 86, 87-88. Further, an investigatory stop based on reasonable suspicion may be justified by information received from a known informant. Adams v.Williams (1972), 407 U.S. 143, 147-148, 92 S.Ct. 1921. Likewise, reasonable suspicion can arise from an anonymous tip, when the totality of the circumstances demonstrates the informant's "`veracity,' `reliability,' and `basis of knowledge.'" Alabamav. White (1990), 496 U.S. 325, 392, 110 S.Ct. 2412.
 {¶ 11} In City of Maumee v. Weisner (1999),87 Ohio St.3d 295, the Ohio Supreme Court addressed the issue of what constitutes reasonable suspicion to justify a dispatch precipitating an investigatory stop of a vehicle. In Maumee the Court held that:
(1) Where an officer making an investigative stop reliessolely upon a dispatch, the state must demonstrate at asuppression hearing that the facts precipitating the dispatchjustified a reasonable suspicion of criminal activity.
 (2) A telephone tip can, by itself, create reasonablesuspicion justifying an investigatory stop where the tip hassufficient indicia of reliability.
Id. at paras. 1 and 2 of syllabus.
 {¶ 12} In Maumee, an officer received a police dispatch concerning a suspected crime of drunk driving in progress. Id. at 295. The dispatch was based upon a call from an eyewitness motorist who was following the car at the time. Id. The caller reported the make, color, and license plate number of the car and described it as "weaving all over the road." Id. The caller also identified himself to the police dispatcher, providing his name and cellular and home phone numbers. Id. The caller continued to follow the car, describing its activities, while the patrolman attempted to locate it. Id. After the caller alerted the dispatcher that the suspicious car had stopped at a railroad crossing, the officer pulled into a parking lot opposite the railroad crossing to wait. Id. After the train passed, the officer stopped the car without personally observing the car weaving or driving erratically. Id.
 {¶ 13} Citing United States v. Hensley (1985),469 U.S. 221, 105 S.Ct. 675, the Maumee court acknowledged that the United States Supreme Court has held that a police officer need not always have knowledge of the specific facts justifying a stop and that an officer may rely upon a police dispatcher or flyer.City of Maumee, 87 Ohio St.3d at 297. The Court noted that the Supreme Court reasoned that the admissibility of the evidence uncovered during such a stop should not rest on whether the officer who is relying on the dispatcher or flyer was aware of the facts, but rather whether the officers who issued the flyer or dispatch possessed reasonable suspicion. Id. Therefore, if the dispatch was issued in the absence of reasonable suspicion, then the stop relying upon the dispatch violates the Fourth Amendment. Id.
 {¶ 14} Turning to the issue of reasonable suspicion, theMaumee court stated that to justify an intrusion on an individual's Fourth Amendment interest, the officer must demonstrate specific and articulable facts, which taken together with rational inferences from those facts, reasonably warranted the intrusion. Id. at 299, citing Terry v. Ohio (1968),392 U.S. 1, 21, 88 S.Ct. 1868. The Court noted reasonable suspicion does not involve a strict inflexible standard, but rather involves a consideration of the totality of the circumstances.City of Maumee, 87 Ohio St.3d at 299, citing United States v.Cortez (1981), 449 U.S. 411, 101 S.Ct. 690.
 {¶ 15} Based on the foregoing, where the information possessed by the police before the stop was solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight to be given the tip and the reliability of the tip. City of Maumee, 87 Ohio St.3d at 299. In other words, the focus of our analysis rests upon the information known by the dispatcher at the time the dispatch is given. To answer this question, we must look at the type of informant giving the tip, whether the tip was reliable, considering a totality of the circumstances, and, finally, whether the information given in the tip was sufficient to justify a reasonable suspicion of criminal activity, allowing the officer to make an investigatory stop.
 {¶ 16} In determining the type of informant giving the tip, the Court identified three general classes of informants: (1) the anonymous informant, who is comparatively unreliable; (2) the known informant from the criminal world, who has provided previous reliable tips; and, (3) the identified citizen informant. Id. at 300. An identified citizen informant may be highly reliable, and, therefore, a strong showing as to other indicia of reliability may be unnecessary. Id. Thus, courts have routinely credited the identified citizen informant with greater reliability. Id.
 {¶ 17} Given the greater degree of reliability typically accorded the identified informant, we must consider whether Hamerick should be classified a anonymous informant or an identified citizen informant. According to Devanna, Hamerick was, at the time of tip, an anonymous informant whose reliability was uncertain. We disagree.
 {¶ 18} At the time Hamerick and Hurley contacted the Wapakoneta Police Department they both identified themselves, their employer, and gave their employer's telephone number to the dispatcher. Additionally, a second call was placed by Hamerick to correct the incorrect license plate number that was originally given. In Maumee, the tipster called from a cell phone, identifying himself, giving cell and home phone numbers and calling back. There, the Court stated that:
In fact, we infer from his willingness to continue assistingPatrolman Roberts that he may have considered face-to-face policecontact a possibility. With that in mind, he would have beenunlikely to offer a false report because of the potentialconsequences. We believe that greater credibility may be due aninformant such as this who initiates and permits extended policecontact rather than one who phones in a tip and retreats from anyfurther police interaction. Accordingly, we consider the citizeninformant to have identified himself sufficiently to accord himgreater reliability than an anonymous informant.
 Maumee, 87 Ohio St.3d at 302.
 {¶ 19} Accordingly, based upon Maumee, we find that Hamerick and Hurley sufficiently identified themselves showing that greater credibility is due.
 {¶ 20} Having resolved the issue of Hamerick's classification, we must now determine from the totality of the circumstances whether the tip is reliable, weighing in favor of the informant's reliability and veracity. Id. at 302. "Typically, a personal observation by an informant is due greater reliability than a secondhand description." Id., citing Illinois v. Gates
(1983), 462 U.S. 213, 233-234, 103 S.Ct. 2317. In the case sub judice, Hamerick had personally observed Devanna when he came through the drive-thru. Even though Hurley initially made the call, Hamerick also spoke with the dispatcher relaying her observations about how Devanna looked and acted, as well as the information about the beer in the cooler. Additionally, Hurley and Hamerick called the police while Devanna was at the drive-thru. As in Maumee, "[t]his immediacy lends further credibility to the accuracy of the facts being relayed, as it avoids reliance upon the informant's memory." Id. Thus, taken together, we are persuaded that Hamerick's tip is trustworthy and due significant weight.
 {¶ 21} Finally, we must determine whether the tip itself was sufficient to justify a reasonable suspicion of criminal activity, allowing the officer to stop the vehicle in reliance on the dispatch. When she spoke with the dispatcher, Hamerick stated that she believed that the individual was intoxicated because his eyes were extremely bloodshot, his speech was extremely slurred, he was slow to respond and there was a cooler in the vehicle containing beer cans. Hamerick also gave the dispatcher a description of the individual's car and a license plate number. Prior to Officer Zwiebel stopping Devanna, he saw a car that fit the description whose license's plate number matched the dispatch coming from the direction of Captain D's. Based on the information that was given to the dispatcher, we find that there was sufficient evidence for Officer Zwiebel to stop Devanna's vehicle. Hamerick's description of Devanna as having bloodshot eyes, slurred speech and being slow to respond in conjunction with her seeing a cooler with beer is sufficient to support a finding that Officer Zwiebel was entitled to stop Devanna for the purpose of investigation. While this information may be insufficient to support a finding of probable cause, there are sufficient "`specific and articulable facts which, taken together with rational inferences from those face, reasonably warrant [the] intrusion'" of an investigatory stop. Maumee,87 Ohio St.3d at 299, citing Terry, 392 U.S. at 21.
 {¶ 22} Having found that Hamerick was an identified citizen informant, that the totality of the circumstances support a finding that the tip was reliable and that the tip itself was sufficient to justify a reasonable suspicion of criminal activity, we find that the trial court did not err in denying Devanna's motion to suppress. Accordingly, the sole assignment of error is overruled.
 {¶ 23} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 Shaw, P.J., and Bryant, J., concur.