OPINION *Page 2 
{¶ 1} Plaintiff-Appellant, the State of Ohio, appeals the judgment of the Bellefontaine Municipal Court, granting Defendant-Appellee's, Clayton D. Bailey, motion to suppress evidence. On appeal, the State contends that the trial court erred in granting Bailey's motion to suppress because the police had probable cause to arrest Bailey. Finding that the police lacked probable cause to arrest Bailey, we affirm the judgment of the trial court.
 {¶ 2} In October 2006, Bailey was arrested and cited for one count of operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(d) and R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, and one count of failure to use a turn signal while turning in violation of R.C. 4513.261, a minor misdemeanor. A breath analysis test conducted at the police station established that Bailey's breath alcohol concentration was in excess of the legal limit of .08 grams of alcohol per 210 liters of breath. Subsequently, Bailey entered a plea of not guilty as to both counts.
 {¶ 3} In November 2006, Bailey moved to suppress evidence obtained from the stop, arguing that the arresting officer observed no traffic violation and had no probable cause to conduct a stop; that he passed the field sobriety tests; and, that the breath alcohol test was not conducted properly.
 {¶ 4} In January 2007, the trial court held a hearing on the motion to suppress evidence, during which the following testimony was heard. *Page 3 
 {¶ 5} Trooper Merrill J. Thompson of the State Highway Patrol testified that on October 14, 2006, he received a dispatch "that Bellefontaine PD had received a call of a possible drunk driver. He had just left the city. He was traveling at a high rate of speed in the city. They advised that a Bellefontaine officer was behind this vehicle on 33; however, [the Bellefontaine officer was] out of the city and they were traveling approximately 80 miles an hour on 33" (hearing tr., p. 5); that the Bellefontaine police "did not make — want to make a stop because they were out of their jurisdiction on 33" (hearing tr., p. 43); that the dispatcher gave him the suspect vehicle's description and license plate number; that he encountered the vehicle described; that he did not observe the driver, Bailey, go left of center, weave, or go off the right side of the roadway; that he observed Bailey make a proper turn with a proper signal; that Bailey "[continued to a stop sign where he had made a complete stop and proceeded to turn right; however, he didn't signal or use his right-hand turn signal when he had made the turn" (hearing tr., p. 6); that, besides failing to signal, Bailey had no other apparent difficulty in making the turn; that, after Bailey failed to signal while turning, he activated his lights and signaled for Bailey to stop; and, that Bailey properly pulled over and properly parked.
 {¶ 6} Further, Trooper Thompson testified that, when he approached the vehicle, he smelled an odor of alcohol from the vehicle; that he removed Bailey from the vehicle to see if the odor came from him or his passenger; that Bailey appeared "a little uneasy on his feet walking back to [the police] car" (hearing tr., p. 8); that "once [Bailey] was in *Page 4 
the [police] car [he] could still smell the odor of alcohol coming from his person when he spoke" (hearing tr., p. 8); that, upon inquiry, Bailey told him he had not had any alcohol to drink; that Bailey's eyes were a little bloodshot and glassy; that he administered the horizontal gaze nystagmus test (hereinafter referred to as "HGN test") on Bailey; that there are a total of six clues indicating that an individual is under the influence of alcohol on the HGN test; that Bailey exhibited all six clues on the HGN test; that he administered the "one-leg stand" test on Bailey; that there are six total clues indicating that an individual is under the influence of alcohol on the "one-leg stand" test; that Bailey put his foot down three times during the "one-leg stand" test, which is a clue; that he administered the "walk and turn" test on Bailey; that Bailey stepped off the line once before the turn and once after the turn; and, that Bailey skipped a number while counting during the "walk and turn" test.
 {¶ 7} After direct-examination of Trooper Thompson, the court observed a videotape of the stop.
 {¶ 8} On cross-examination, Trooper Thompson testified that he created a written report with his notes concerning the arrest on the same day as the arrest; that, while he and Bailey were walking to his car, he "smelled a tiny odor" on Bailey's breath (hearing tr., p. 20); that Bailey at no time had a problem entering vehicles or exiting vehicles; that, in the police manual, an individual is considered as having failed a sobriety test if he displays two or more clues on the test; that the report he filled out shows that Bailey *Page 5 
displayed only one clue in the "walk and turn" test; that the line Bailey stepped off while walking "[w]as an imaginary line" (hearing tr., p. 25); that the report he filled out shows that Bailey displayed only one clue in the "one-leg stand" test; that he did not check Bailey's eyes for proper tracking and equal pupil size prior to conducting the HGN test; that the police academy advises that the HGN test should be conducted for a minimum of sixty-eight seconds; that the video shows that he conducted the HGN test on Bailey for less than fifty-two seconds; that Bailey had the ability to understand and follow his directions; that he did not observe any impairment in Bailey's ability to communicate or speak; that Bailey's clothes looked orderly and his face was not flushed; that he did not state in his report that Bailey's eyes were glassy and bloodshot; that Bailey was cooperative, polite, and did not have mood changes; and, that Bailey did not fail either the "walk the line" or the "one-leg stand" test.
 {¶ 9} Paul Butkovich, a private citizen, testified that, on October 14, 2006, he observed Bailey driving erratically[1]; that he called 911 to report Bailey and was eventually transferred to the Bellefontaine Police Department; that he followed Bailey's truck until it went into a restaurant drive-through, and, at that point, the Bellefontaine Police Department contacted him and he pointed out Bailey's vehicle to them; that he gave his name and telephone number to the police; that he gave Bailey's license plate *Page 6 
number to the police; and, that he saw the Bellefontaine police begin to follow Bailey when he exited the restaurant.
 {¶ 10} Subsequently, the trial court granted Bailey's motion to suppress, stating, in pertinent part:
 Trooper Merrill Thompson of the Ohio State Highway Patrol testified that he received a notice to be on the lookout for a suspected drunk driver on U.S. Route 33 in Logan County. The call originated from a private citizen who observed the vehicle being driven erratically in the city of Bellefontaine. The Bellefontaine Police Department fell in behind the vehicle but abandoned its observation of the vehicle when it entered U.S. Route 33. The court assumes that the Bellefontaine Police Department saw no violations of law, but nonetheless advised the Highway Patrol to be on the lookout for the vehicle traveling westbound on U.S. Route 33.
 Trooper Thompson fell in behind the vehicle, being operated by this defendant, just east of the Village of Russell's Point. Trooper Thompson saw no erratic driving on behalf of the defendant, but did stop the defendant's vehicle when he failed to signal a right-hand turn from a stop sign in a residential area.
 After escorting the defendant back to his patrol car, the officer testified that he could detect an odor of alcohol about the defendant's person. He also testified that he noticed the defendant's eyes were a little bloodshot and glassy, although counsel for defendant pointed out on cross examination that this observation was not noted any place in the officer's written report or Alcohol Influence Report Form.
 The officer testified as to the defendant's performance on three standardized field sobriety tests. On the horizontal gaze nystagmus test the officer testified that he observed all six clues of impairment. He candidly testified, however, that the defendant passed the one-leg stand test and walk and turn test.
 The court had the benefit of observing a video tape of the defendant's arrest. This included his operation on U.S. Route 33; his turn into a residential area, together with several other turns and stops; his exit from his vehicle and walk back to the patrol car; and his performance on the one-leg stand test and walk and turn test. The court found nothing in those observations which would have given a *Page 7 reasonable person cause to be concerned about the defendant's ability to safely operate a motor vehicle.
 It is well settled in Ohio that the mere commission of a minor traffic violation combined with an odor of alcohol does not constitute probable cause to arrest for operating under the influence of alcohol.
 This case, however, adds the additional element of the defendant's failure of the horizontal gaze nystagmus test. While giving some weight to that testimony, the court cannot ignore the fact that the defendant was able to satisfactorily complete the two other sobriety tests that he was requested to take. If the court is asked to consider as scientifically reliable the one-leg stand test and walk and turn test in establishing probable cause to arrest, the court must also be able to rely upon those tests to establish the lack of probable cause.
 Based upon the totality of the circumstances, the court is satisfied that the arresting officer had reasonable grounds to stop the defendant's vehicle, but that he lacked probable cause thereafter to arrest the defendant for the charge of operating under the influence of alcohol.
 Ironically, after Trooper Thompson testified the State called Paul Butkovich, the private citizen who originally observed the defendant's operation within the city of Bellefontaine. The court rules, however, that it would not be appropriate to consider Mr. Butkovich's observations in determining whether or not Trooper Thompson had probable cause to arrest the defendant. Trooper Thompson had to make his determination of probable cause based upon the information which he had at hand on the afternoon of defendant's arrest (It should be noted that the Trooper was not made aware, even by way of hearsay, as to what Mr. Butkovich had previously seen). The officer cannot be allowed to bolster his determination as to probable cause based upon after-acquired evidence.
(Jan. 2007 Judgment Entry, pp. 1-4).
 {¶ 11} It is from this judgment that the State appeals, presenting the following assignments of error for our review. *Page 8 
 Assignment of Error No. I THE COURT ERRED, TO APPELLANT'S PREJUDICE, WHEN IT GRANTED APPELLEE'S MOTION TO SUPPRESS WHEN THE TOTALITY OF THE CIRCUMSTANCES AT THE SCENE GAVE THE LAW ENFORCEMENT OFFICER PROBABLE CAUSE TO BELIEVE THAT A CRIME HAD BEEN COMMITTED.
 Assignment of Error No. II THE COURT ERRED, TO APPELLANT'S PREJUDICE, WHEN IT HELD THAT EYEWITNESS INFORMATION IS "AFTER-ACQUIRED" EVIDENCE THAT MAY NOT BE USED TO DETERMINE PROBABLE CAUSE TO MAKE AN ARREST.
 {¶ 12} Due to the nature of the State's assignments of error, we elect to address them in reverse order. Additionally, the following standard of review applies throughout.
 Standard of Review {¶ 13} "Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact." State v. Dudli, 3d Dist. No. 3-05-13, 2006-Ohio-601, at ¶ 12, citing United States v.Martinez (11th Circ. 1992), 949 F.2d 1117, 1119. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented.State v. Johnson (2000), 137 Ohio App.3d 847, 850. Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. State v. Roberts,110 Ohio St.3d 71, 2006-Ohio-3665, at ¶ 100, citing State v. Fanning (1982),1 Ohio St.3d 19, 20. The appellate *Page 9 
court must then review the application of the law to the facts de novo.Roberts, supra, citing State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8.
 {¶ 14} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures. Neither the Fourth Amendment nor Section 14, Article I explicitly requires that violations of its provisions against unlawful searches and seizures be remedied by suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment. Mapp v. Ohio (1961), 367 U.S. 643, 649. The main rationale of the exclusionary rule is to remove the incentive to violate the Fourth Amendment and thereby deter police from unlawful conduct.State v. Jones, 88 Ohio St.3d 430, 435, 2000-Ohio-374, abrogated byState v. Brown, 99 Ohio St.3d 323, 2003-Ohio-3931.
 {¶ 15} At a suppression hearing, the State bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement, Xenia v. Wallace (1988),37 Ohio St.3d 216, at paragraph two of the syllabus; State v. Kessler
(1978), 53 Ohio St.2d 204, 207, and that it meets Fourth Amendment standards of reasonableness. Maumee v. Weisner, 87 Ohio St.3d 295, 297,1999-Ohio-68, citing 5 LaFave, Search and Seizure (3 Ed. 1996), Section 11.2(b). *Page 10 
 Assignment of Error No. II {¶ 16} In its second assignment of error, the State asserts that the trial court erred in holding that eyewitness information is "after-acquired" evidence that may not be used to determine probable cause to make an arrest. Specifically, the State asserts that the Bellefontaine Police Department relayed information about Bailey's erratic driving to the State Highway Patrol dispatch, and that this information should be imputed to Trooper Thompson. Although we agree that any information possessed by the Bellefontaine Police Department should be imputed to Trooper Thompson, we disagree with the State's contention that the Police Department relayed information about Bailey's alleged erratic driving to the State Highway Patrol dispatch.
 {¶ 17} Under the concept of collective knowledge, "a fellow officer's statements can establish probable cause for the issuance of a warrant, [and therefore,] they should also establish probable cause for a warrantless arrest." State v. Henderson (1990), 51 Ohio St.3d 54, 57, citing Whitely v. Warden (1971), 401 U.S. 560, 568. "So long as `the law enforcement system as a whole has complied with the Fourth Amendment' and possesses facts adding up to probable cause, the arrest will be valid even though the arresting officer alone does not possess these facts." Henderson, 51 Ohio St.3d at 57, quoting 1 LaFave Israel, Criminal Procedure (1984), Section 3.3(e). Therefore, "[j]ust as in the case of a radio dispatch that justifies an investigatory stop, it is the collective knowledge of the law-enforcement officers that allows the arresting officer to rely upon *Page 11 
those facts to effect an arrest." State v. Brown, 11th Dist. No. 2006-L-040, 2007-Ohio-464, at ¶ 34, citing State v. Cook (1992),65 Ohio St.3d 516, 521.
 {¶ 18} Additionally, where information comes from a private citizen who claims to be a witness to or victim of a crime, "* * * the information carrie[s] with it an indicia of reliability and is presumed to be reliable even without specific corroboration of reliability."State v. Pettry (1990), 4th Dist. Nos. 617 618, 1990 WL 119162, citing 1 LaFave, Search and Seizure (2d Ed. 1987), Sec. 3.4(a). In determining the weight to be given to an informant's tip, we must examine "* * * the type of informant giving the tip, whether the tip was reliable, considering a totality of the circumstances, and, finally, whether the information given in the tip was sufficient to justify a reasonable suspicion of criminal activity, allowing the officer to make an investigatory stop." State v. Devanna, 3d Dist. No. 2-04-12,2004-Ohio-5096, at ¶ 15. Logically, we should make the same examination when determining the weight of an informant's tip in finding probable cause to arrest.
 {¶ 19} In Devanna, supra, the State presented testimony that a fast food employee called police and identified herself and her employer, told the police dispatcher that "she had witnessed an individual in the drive-thru who appeared to be intoxicated * * * [and] that she believed that the individual was intoxicated because his eyes were extremely bloodshot, his speech was extremely slurred, he was slow to respond and there was a cooler in the vehicle containing beer cans," and gave the officer the driver's license plate *Page 12 
number and described his vehicle. 2004-Ohio-5096, at ¶ 3. This Court determined that the employee's identification of herself and description to the dispatcher of the driver's bloodshot eyes, slurred speech, slow responses, and cooler of beer, constituted reasonable suspicion justifying a stop of the vehicle. Similarly, the Supreme Court of Ohio held that reasonable suspicion to stop a vehicle existed where a caller identified himself to the police dispatcher, told the dispatcher that the vehicle was "weaving all over the road," and followed the vehicle while describing its activities to the dispatcher. Maumee v.Weisner, 87 Ohio St.3d 295, 1999-Ohio-68.
 {¶ 20} In the case sub judice, any collective knowledge possessed by the law enforcement system adding up to probable cause to arrest Bailey for driving while under the influence of alcohol should be imputed to Trooper Thompson, because, pursuant to Henderson, he was entitled to rely upon any such facts. Therefore, the trial court's statement that Trooper Thompson "had to make his determination of probable cause based upon the information which he had at hand * * *" was erroneous. (Jan. 2007 Judgment Entry, p. 4). However, the evidence presented by the State did not establish that the law enforcement system possessed collective knowledge of any erratic driving by Bailey that would constitute probable cause for his warrantless arrest.
 {¶ 21} Trooper Thompson testified that he received a dispatch that Bellefontaine police had received a call of a "possible drunk driver" and that a Bellefontaine police officer had witnessed the driver speeding. However, Trooper Thompson offered no *Page 13 
testimony demonstrating that he received information from the dispatch that the Bellefontaine police had witnessed any erratic driving by Bailey, because speeding alone does not constitute erratic operation of a vehicle. See State v. Gray, 10th Dist No. 01AP-1251, 2002-Ohio-4328, at ¶ 22 (holding that, where defendant was traveling thirty miles over the speed limit, officer did not have probable cause to arrest because "* * * although defendant was speeding, his driving was not observed to be erratic * * *"); State v. Taylor (1981), 3 Ohio App.3d 197, 198
(holding that, where defendant was traveling fifteen miles over the speed limit, "* * * an uncomplicated speed violation, only nominally in excess of the prima facie limit, without any weaving, improper lane changing, or other indication of impaired control of the vehicle, [is not] corroborative evidence of intoxication"); but, cf, State v.Pappas, 5th Dist. No. 83-CA-20, 1984 WL 4940 (holding that "speeding stands equally with lane changing, weaving and other traffic offenses"). Further, neither the Bellefontaine Police Department dispatcher nor the Bellefontaine officer who witnessed the speeding testified at the suppression hearing. Thus, there is no evidence in the record demonstrating that either the Bellefontaine Police Department dispatcher or the Bellefontaine officer witnessed any erratic driving from personal observation or received such information from Butkovich.
 {¶ 22} Likewise, although Butkovich is presumed reliable and testified extensively to his personal observations of Bailey's erratic driving, the State presented no testimony demonstrating what, if any, information Butkovich relayed to the Bellefontaine Police *Page 14 
Department concerning Bailey's erratic driving. This distinguishes the case sub judice from Devanna, supra, and Weisner, supra, where the citizen informants testified that they informed the police dispatcher of specific facts and circumstances suggesting that the drivers were under the influence of alcohol. Therefore, because the State did not establish that the law-enforcement community as a whole possessed facts constituting probable cause to arrest, we find that the trial court did not err to the State's prejudice.
 {¶ 23} Accordingly, we overrule the State's second assignment of error.
 Assignment of Error No. I {¶ 24} In its first assignment of error, the State asserts that the trial court erred when it granted Bailey's motion to suppress evidence because the totality of the circumstances at the scene gave the law enforcement officer probable cause to believe that a crime had been committed. Specifically, the State claims that Bailey exhibited sufficient indicia that he was under the influence of alcohol to give Trooper Thompson probable cause to arrest him for operating a vehicle while under the influence of alcohol. We disagree.
 {¶ 25} A warrantless arrest is unconstitutional unless the arresting officer has probable cause to make the arrest at the time of the arrest.State v. Timson (1974), 38 Ohio St.2d 122, 127. "In determining whether the police had probable cause to arrest an individual for Operating a Motor Vehicle while Intoxicated, we must consider whether, at the moment of arrest, the police had information, derived from a reasonably trustworthy *Page 15 
source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." State v.Thompson, 3d Dist. Nos. 14-04-34 14-04-35, 2005-Ohio-2053, at ¶ 18, citing State v. Homan (2000), 89 Ohio St.3d 421, superseded by statute on other grounds as stated in State v. Boczar, 113 Ohio St.3d 148,2007-Ohio-1251. In determining the presence of probable cause, a court must examine the "totality of the circumstances." State v. Cromes, 3d Dist. No. 17-06-07, 2006-Ohio-6924, at ¶ 38, citing United States v.Arvizu (2002), 534 U.S. 266.
 {¶ 26} This Court has upheld trial courts' findings of sufficient indicia of operation under the influence of alcohol to constitute probable cause to arrest where the defendant had glassy eyes, a strong odor of alcohol, and failed all three field sobriety tests administered,State v. Rannes, 3d Dist. No. 8-02-12, 2002-Ohio-4691; where the defendant was very groggy, had very slurred speech, had bloodshot eyes, and failed all three field sobriety tests administered, State v.Penrose (1992), 3d Dist. No. 8-9-22, 1992 WL 147556; and, where the defendant admitted to drinking, stated that he had just left a bar, had red, glassy eyes, had an odor of alcohol, failed the HGN test, and exhibited signs of impairment during two other sobriety tests, State v.Jividen, 3d Dist. No. 9-05-29, 2006-Ohio-2782. Conversely, this Court upheld a trial court's finding of insufficient indicia of operation under the influence of alcohol to constitute probable cause to arrest where the defendant had an odor of alcohol on his breath, admitted to drinking two or three beers, had appropriate motor and mental skills, did not drive in a manner suggesting *Page 16 
impairment, performed well on two field sobriety tests, and failed the HGN test. State v. Hurley, 3d Dist. No. 8-03-14, 2003-Ohio-6100.
 {¶ 27} Here, the State argues that the totality of the circumstances at the scene gave Trooper Thompson probable cause to believe that Bailey was operating a vehicle while under the influence of alcohol. Trooper Thompson was aware that the dispatcher had reported Bailey as a "possible drunk driver" and that a Bellefontaine police officer had observed Bailey speeding. He also testified that he personally observed Bailey exhibiting "[s]igns of impairment" (hearing tr., p. 39). However, Trooper Thompson also testified that he did not see alcohol appreciably impair Bailey's ability to operate his car; that he smelled a "tiny" odor on Bailey's breath; that Bailey at no time had difficulty entering or exiting vehicles; that Bailey's eyes were a "little" bloodshot and glassy, although he did not state this in his report; that Bailey was not impaired in his ability to understand and follow directions, communicate, or speak; that Bailey did not fail either the "walk and turn" or "one-leg stand" test; that he did not do any pre-testing to check Bailey's pupil size or tracking prior to conducting the HGN test; that he did not conduct the HGN test for the minimum amount of time recommended; and, that Bailey was cooperative, polite, and did not have mood changes. This testimony constitutes competent, credible evidence supporting the trial court's finding that Bailey did not exhibit significant indicia that he was under the influence of alcohol. *Page 17 
 {¶ 28} Because "* * * the trial court is in the best position to evaluate the evidence and the credibility of witnesses," State v.Rauscher, 3d Dist. No. 9-06-42, 2007-Ohio-3339, at ¶ 8, citingBurnside, 2003-Ohio-5372, at ¶ 8, and because competent, credible evidence existed that Bailey lacked significant indicia that he was under the influence of alcohol, we find that the trial court did not err in determining that Trooper Thompson lacked probable cause to believe that Bailey was under the influence of alcohol at the time of his arrest.
 {¶ 29} Accordingly, we overrule the State's first assignment of error.
 {¶ 30} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 WILLAMOWSKI, J., CONCURS SEPARATELY.
[1] We note that Butkovich testified extensively to his personal observations of Bailey's driving, however, he did not testify to what information he relayed to the Bellefontaine Police Department.