[Cite as *State v. Fields*, 2009-Ohio-5909.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                    CASE NO.  16-09-06

     v.

PHILIP L. FIELDS,                          O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Upper Sandusky Municipal Court

Trial Court No. TRC-08-5258 A/B

Judgment Reversed and Cause Remanded

Date of Decision:  November 9, 2009

APPEARANCES:

    *Dennis E. Pfeifer*  for Appellant

    *Kathryn M. Collins*  for Appellee

**PRESTON, P.J.**

{¶1}  Although originally placed on our accelerated calendar, we have elected pursuant to Loc.R. 12(5) to issue a full opinion in lieu of a summary journal entry.

{¶2}  Defendant-appellant, Philip L. Fields (hereinafter "Fields"), appeals the Upper Sandusky Municipal Court's judgment dismissing his motion to suppress.  For the reasons that follow, we reverse.

{¶3}  This appeal stems from the events that occurred on or about November 28, 2008, when Fields was cited for operating a vehicle while under the influence in violation of R.C. 4511.19(A)(1)(g), a misdemeanor of the first degree, and failure to drive in marked lanes in violation of R.C. 4511.33, a minor misdemeanor.  On December 15, 2008, Fields entered a plea of not guilty to both charges, and on February 17, 2009, Fields filed a motion to suppress.  A hearing on the motion to suppress was held on March 11, 2009.  The State presented two witnesses, Michael Calmes (hereinafter "Calmes") and Deputy Robison of the Wyandot County Sheriff's Department.  Fields presented no evidence or testimony.

{¶4}  At the conclusion of the hearing, the parties presented their arguments on whether Deputy Robison had reasonable, articulable suspicion to have properly detained Fields based solely on the dispatch the Deputy had

received, which had stemmed from Calmes' tip. After considering the evidence and arguments, the trial court overruled the motion to suppress. (Mar. 11, 2009 Tr. at 28); (Mar. 11, 2009 JE, Doc. No. 25). As a result, Fields entered a plea of no contest to an amended OVI charge in violation of R.C. 4511.19(A)(1)(a), and was found guilty. Fields was given a six month license suspension and sentenced to 39 days in jail, 30 days suspended on the conditions that he would not drive until he re-obtained his driver's license, would not drive beyond the scope of his limited driving privileges, and that he attend and complete a driver intervention program.

{¶5} Fields now appeals and raises two assignments of error. Because of the nature of his assignments of error, we will address them together.

## ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN DENYING HIS MOTION TO SUPPRESS BECAUSE THE LAW ENFORCEMENT OFFICER DETAINED APPELLANT WITHOUT REASONABLE SUSPICION OF A TRAFFIC VIOLATION OR CRIMINAL ACTIVITY.**

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED WHEN IT RELIED ON MICHAEL CALMES' TESTIMONY AS THE BASIS TO UNLAWFULLY ARREST AND/OR AN UNLAWFUL SEIZURE OF APPELLANT.**

{¶6} In his assignments of error, Fields argues that the trial court erred when it denied his motion to suppress because the officer did not personally observe any violations of law and did not have reasonable suspicion to detain Fields. Furthermore, Fields argues that the trial court erred in relying on Calmes' testimony to justify his detention and subsequent arrest. The State responds by arguing that the officer did have reasonable suspicion to detain Fields based on the information Calmes' provided to the dispatcher, which was then transmitted to the officer.

{¶7} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. See *State v. Carter* (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965. When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside*, 2003-Ohio-5372, at ¶8. With respect to the trial court's conclusions of law, however, our standard of review is de novo and we must decide whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539. After a review of the record, we believe that the trial court erred in concluding that Calmes' tip

provided Deputy Robison with reasonable, articulable suspicion to lawfully detained Fields.

{¶8} The Fourth and Fourteenth Amendments to the United States Constitution generally prohibit warrantless searches and seizures, and any evidence that is obtained during an unlawful search or seizure will be excluded from being used against the defendant. *Mapp v. Ohio* (1961), 367 U.S. 643, 649, 81 S.Ct. 1684, 6 L.Ed.2d 1081. At a suppression hearing, the State bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement, and that it meets Fourth Amendment standards of reasonableness. *City of Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, at paragraph two of the syllabus; *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 373 N.E.2d 1252; *City of Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 297, 729 N.E.2d 507, citing 5 LaFave, Search and Seizure (3 Ed.1996), Section 11.2(b).

{¶9} One exception to the warrant requirement is that a police officer may conduct an investigative stop if they have reasonable, articulable suspicion of criminal activity. *State v. Keck*, 3d Dist. No. 5-03-27, 2004-Ohio-1396, ¶11; *State v. Bobo* (1988), 37 Ohio St.3d 177, 179, 524 N.E.2d 489; *Berkemer v. McCarty* (1984), 468 U.S. 420, 439-40, 104 S.Ct. 3138, 82 L.Ed.2d 317. In determining whether reasonable, articulable suspicion exists, a reviewing court must look to

the totality of the circumstances. *State v. Andrews* (1991), 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271. Under this analysis, a court should consider "both the content of the information possessed by police and its degree of reliability." *Weisner,* 87 Ohio St.3d at 299, quoting *Alabama v. White* (1990), 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301.

{¶10} Contrary to what Fields contends, the law is clear than an officer does not have to have personally observed a traffic violation or criminal activity to justify detaining someone; rather, an officer can rely on information transmitted to him through a dispatch or flyer. *Weisner*, 87 Ohio St.3d at 297, citing *United States v. Hensley* (1985), 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604. See, also, *State v. Henderson* (1990), 51 Ohio St.3d 54, 57, 554 N.E.2d 104; *State v. Bailey*, 3d Dist. No. 8-07-02, 2008-Ohio-2254, ¶17; *State v. Devanna*, 3d Dist. No. 2-04-12, 2004-Ohio-5096, ¶13. Sometimes, like the case here, the basis for the officer's stop stems solely from an informant's tip that was transmitted to the officer through a dispatch. The Ohio Supreme Court dealt with this specific issue in *City of Maumee v. Weisner*.

{¶11} In *Weisner*, an officer received a police dispatch concerning a suspected driver operating a motor vehicle under the influence. Id. at 295, syllabus. The dispatch was based on the information from an eyewitness motorist who had been following the vehicle and called the police to report its suspected

activities. Id. The caller reported the make, color, and license's plate number of the vehicle and provided the dispatcher with his name and home and cell phone numbers. Id. The caller continued to follow the vehicle, all the while describing its activities, until the police officer was able to locate it. Id. The vehicle and the caller stopped at a railroad crossing, and the officer pulled into a parking lot opposite the railroad crossing, and waited for the train to pass. Id. Once the train passed, the officer stopped the car without personally observing it swerving or driving erratically. Id.

{¶12} As stated above, the Ohio Supreme Court acknowledged that officers do not need to possess personal knowledge of the specific facts to justify a stop but can rely on information from a flyer or a dispatch. Id. at 297, citing *United States v. Hensley* (1985), 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604. However, as the Ohio Supreme Court reasoned when it was interpreting a United States Supreme Court case dealing with this exact issue:

> **The United States Supreme Court has reasoned, then, that the admissibility of the evidence uncovered during such a stop does not rest upon whether the officers *relying upon a dispatch or flyer* "were themselves aware of the specific facts which led their colleagues to seek their assistance. It turns instead upon "whether the officers who *issued* the flyer" or dispatch possessed reasonable suspicion to make the stop. * * * Accordingly, we clarify here that where an officer making an investigative stop *relies solely upon a dispatch*, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity.**

*Weisner*, 87 Ohio St.3d at 297, quoting *Hensley* (1985), 469 U.S. at 231 (emphasis in original). Thus, as long as the dispatch was issued on the basis of reasonable, articulable suspicion, then a stop relying on the dispatch will be permissible under the Fourth Amendment. Id.

{¶13} Here, the State presented two witnesses at the suppression hearing: Calmes and Deputy Robison. Calmes testified that he made a 911 call on November 28, 2008 around 6 p.m., when he was heading south on South Sandusky and suspected that a driver was under the influence. (Mar. 11, 2009 Tr. at 5). He testified that on that night he observed a red pickup truck heading south on the same road and it was "swerving pretty good." (Id. at 5). There were no other cars between Calmes and the red pickup truck and he remained about 50 yards behind it. (Id. at 4-6). He stated that, at one point, the truck attempted to make a left-hand turn, but ended up driving into someone's yard before pulling back out onto the road. (Id. at 6-7). Then Calmes testified that he saw the truck make a "sweeping right-hand turn" and almost hit another vehicle head-on, which caused the other vehicle to swerve into the left lane in order to miss the truck. (Id. at 7). After the near-collision, Calmes (who was still following the truck) testified that the truck was going very slow, but still was "weaving all over the road." (Id. at 8). Calmes continued to follow the truck until it pulled into a house right before

an exit ramp, at which point, Calmes asked the dispatcher if he wanted him to stay there and wait for the police to arrive. (Id.). The dispatcher told him to wait there, so Calmes said that he waited on the exit ramp and waited until the police arrived. (Id. at 8-9). There was no testimony that this particular conversation between Calmes and the dispatcher was a continuation from his original 911 call or whether it was a separate phone call made at a later time. (See id.) Calmes admitted on cross-examination that he waited about ten minutes for the police to arrive, and during that time, he was unable to see the vehicle once it had pulled into the driveway. (Id. at 10-12). Nevertheless, Calmes also stated that he never saw the red pickup truck leave the driveway. (Id.).

{¶14} In addition, Deputy Robison testified that on November 28, 2008, he was "advised of a complaint about someone's driving * * * on South Sandusky Street headed, uhm, 199 towards 23." (Id. at 15). Moreover, he said that he was told that the vehicle in question was a "red pickup truck." (Id.). When he arrived at the location, he had a "short conversation with Deputy Doty * * * [who] went and spoke with the witness who was sitting on the ramp, and I went and made contact with the driver" who was in a vehicle matching the description parked in a private driveway. (Id. at 15-16). We note that at the time when Deputy Robison was approaching the vehicle, the evidence indicates that he had only been given a brief dispatch as quoted above, and that he never talked to the eye-witness

-9-

(Calmes) about his personal observations. As he approached the vehicle, Deputy Robison said that he saw a person (Fields) climb out of the car and walk up onto a porch on the back of the residence. (Id. at 16-17). Deputy Robison said that he instructed Fields to stay there and refrain from entering into the residence, but Fields was not following his instructions. (Id. at 17). Eventually, Deputy Robison testified that he went up on the porch and made contact with Fields and had a brief discussion regarding the complaint he had received. (Id.). At this time, Deputy Robison said he could detect an odor of alcohol coming from Fields and noticed that his eyes were bloodshot and that he was swaying while they were talking. (Id.). Deputy Robison attempted to conduct field sobriety tests on Fields but eventually terminated the tests due to Fields unwillingness to follow his instructions. (Id. at 17-20). As a result, Deputy Robison arrested Fields and cited him for operating a vehicle under the influence and failure to drive in marked lanes. (Id. at 20).

{¶15} At the end of the hearing, the trial court denied Fields' motion to suppress and made the following findings:

> **This Court has some familiarity with these types of cases, and the reliability factor can justify ascertainable suspicion that a criminal activity has occurred depends upon the information supplied, and it's kind of like a chain of evidence.**
> **And here we have an individual, known individual, who remains at the location. Now, he didn't see anybody get out of the car. He didn't see the driver, but he did see the pickup**

> **truck. He did follow it. He did explain to the dispatcher, explained to, uhm, the officers the circumstances which justifies the approach and the initial investigation.**

(Mar. 11, 2009 Tr. at 28).

{¶16} We agree with the trial court's assessment of Calmes' reliability. When the information comes from a private citizen who claims to be a witness to or victim of a crime, "the information carrie[s] with it an indicia of reliability and is presumed to be reliable even without specific corroboration of reliability." *State v. Bailey*, 3d Dist. No. 8-07-02, 2008-Ohio-2254, ¶18, quoting *State v. Pettry* (Aug. 9, 1990), 4th Dist. Nos. 617 & 618, at *5, citing 1 LaFave, Search and Seizure (2d Ed.1987), Sec. 3.4(a). Moreover, we also believe that because Calmes personally observed the red pickup truck's erratic behavior, his testimony should have been afforded greater reliability, than had it had been a secondhand description. See *Devanna,* 2004-Ohio-5096, at ¶ 20, citing *Illinois v. Gates* (1983), 462 U.S. 213, 233-34, 103 S.Ct. 2317, 76 L.Ed.2d 52. However, we believe that the trial court erred in concluding that Calmes' tip provided Deputy Robison with reasonable, articulable suspicion because there is no evidence that the dispatcher or Deputy Robison were informed of Calmes' observations.

{¶17} There is absolutely no evidence that Calmes' told the Wyandot County Sheriff's Department dispatcher of his personal observations, nor can we, from Deputy Robison's testimony, imply that the dispatcher knew of these

-11-

personal observations. At the suppression hearing, the State only asked Calmes the following questions:

> **Q   Did you have an opportunity to make a 911 call on November 28th, 2008, around 6 o'clock in the event?**
> **A   Yes.**
> **Q   And where were you at when you made that call?**
> **A   I was heading south on South Sandusky.**
> **Q   And is that in the City of Upper Sandusky?**
> **A   Yes.  Hm-hmm.**
> **Q   Wyandot County, Ohio?**
> **A   Yeah.**
> **Q   Could you describe what you observed?**

(Mar. 11, 2009 Tr. at 5).  After which point, Calmes described the above stated observations.  However, at no point did Calmes testify that he had told the dispatcher anything he had observed either while it was occurring or at a later time in another phone call.  In addition, Deputy Robison's testimony failed to illustrate that he or the dispatcher were aware of the details of Calmes' personal observations.  Deputy Robison's testimony only provided that he was "advised of a complaint about someone's driving," that it was a red pickup truck on South Sandusky Street heading 199 towards 23.  (Id. at 15).  Moreover, the evidence indicates that Deputy Robison only had a brief dispatch and never spoke to Calmes about his observations before approaching the vehicle and detaining Fields.  (Id. at 15-16).  As stated above, when an officer relies solely on a dispatch to justify an investigative stop, the State must demonstrate that "'the officers who

*issued* the flyer' or dispatch possessed reasonable suspicion to make the stop."
*Weisner*, 87 Ohio St.3d at 297, quoting *Hensley* (1985), 469 U.S. at 231 (emphasis
in original).  Here, there is simply no evidence that Calmes' personal observations,
though reliable and likely sufficient to support a finding of reasonable, articulable
suspicion, were ever communicated to the dispatcher.

{¶18} The State tries to analogize the facts in this case with the facts in one
of our previous cases: *State v. Devanna*, 3d Dist. No. 2-04-12, 2004-Ohio-5096.
In *Devanna*, a fast food employee had called police and told the dispatcher that
"she had witnessed an individual in the drive-thru who appeared intoxicated."
2004-Ohio-5096, at ¶3.  She told the dispatcher she thought he was intoxicated
because "his eyes were extremely bloodshot, his speech was extremely slurred, he
was slow to respond and there was a cooler in the vehicle containing beer cans."
Id.  She then gave the dispatcher her name, her employer's name, the driver's
license plate number and described his vehicle.  Id.  The dispatcher then contacted
a police officer and informed him of a possible drunk driver who had recently
been seen at one of the fast food restaurants.  Id. at ¶4.  In addition to giving the
police officer a description of the vehicle and its license plate number, the
dispatcher told the police officer that the driver was reported to have slurred
speech and bloodshot eyes.  Id.  The police officer located the vehicle and initiated
a stop even though he did not personally observe a traffic violation prior to

stopping the vehicle. Id. Subsequently, the defendant was placed under arrest for operating a vehicle under the influence. Id.

{¶19} At the motion to suppress hearing, the State presented testimony from the fast food employee and the arresting officer, the trial court denied defendant's motion to suppress, and Devanna appealed to this Court. Id. at ¶¶6-7. On appeal, we held that the fact that the eyewitness had identified herself to the dispatcher and she told the dispatcher her specific reasons for believing the driver was intoxicated (her description of the driver's bloodshot eyes, slurred speech, slow responses, and cooler of beer) constituted reasonable, articulable suspicion, which justified the dispatcher to issue the dispatch, and relaying the same information to the arresting officer who stopped the vehicle, even though he relied solely on the dispatch. Id. at ¶21.

{¶20} Unlike the facts in *Devanna*, here there was no evidence that Calmes relayed his personal observations to the dispatcher; thus, the State failed to demonstrate that the officer issuing the dispatch had reasonable, articulable suspicion of criminal activity. While we find *Devanna* factually distinguishable from this case, we do find the facts in one of our more recent opinions more analogous to the facts in this case.

{¶21} In *State v. Bailey*, the defendant was cited for one count of operating a vehicle while under the influence and one count of failure to use a turn signal.

-14-

3d Dist. No. 8-07-02, 2008-Ohio-2254, at ¶2 (Shaw, P.J., dissenting). At the suppression hearing, the arresting officer testified that he had received a dispatch that another police department had received a call of a "possible drunk driver" and that one of the officers at the other department had witnessed the same vehicle speeding. Id. at ¶¶5-8. The arresting officer located the vehicle and pulled it over after observing the vehicle's failure to signal. Id. Neither the other police officer who had observed the vehicle's speeding nor the dispatcher who had received the citizen's phone call testified at the hearing. Id. at ¶21. In addition, the citizen informant who had made the original call to the other police department testified extensively to his personal observations of the defendant's erratic driving. Id. at ¶9. However, there was no testimony demonstrating what, if any, information the eyewitness had relayed to the other police department's dispatcher concerning the defendant's erratic behavior. Id. at ¶22. Since the State had failed to demonstrate that the law-enforcement community as a whole possessed facts constituting probable cause to arrest, we found *Devanna* and *Weisner* distinguishable and affirmed the trial court's decision to sustain the defendant's motion to suppress. Id.

{¶22} Similarly in this case, there is an absence of evidence demonstrating that someone in the law enforcement community knew specific facts that would support reasonable, articulable suspicion of criminal activity. The State failed to

demonstrate that Calmes' personal observations were relayed to the dispatcher, thereby allowing Deputy Robison to solely rely on the dispatch to justify his investigative stop of Fields. Furthermore, Deputy Robison's testimony, considered alone, fails to demonstrate reasonable, articulable suspicion of criminal activity. While we acknowledge that there is evidence that a law enforcement officer (Deputy Doty) eventually talked to Calmes at the scene, this did not occur until after Deputy Robison had already approached Fields to make the detention and investigation.

{¶23} In addition, while we acknowledge that a trier of fact is allowed to make reasonable inference based on the evidence presented before him, "[a] trier of fact may not rely on an inference based entirely upon another inference, unsupported by any additional fact or another inference from other facts." *State v. Taylor* (Feb. 9. 2001), 7th Dist. No. 98 JE 31, at *3. See, also, *State v. Grant* (1993), 67 Ohio St.3d 465, 478, 620 N.E.2d 50; *State v. Nichols* (1996), 116 Ohio App.3d 759, 689 N.E.2d 98; *State v. Ebright* (1983), 11 Ohio App.3d 97, 99, 463 N.E.2d 400. Based on the evidence presented at the suppression hearing, we believe that in order to have made the finding that it did, specifically that Calmes had "explain[ed] to the dispatcher, explained to, uhm, the officers the circumstances which justifie[d] the approach and the initial investigation," the trial court had to make an inference upon an inference, which was impermissible.

{¶24} Therefore, we find that the trial court erred in concluding that reasonable, articulable suspicion existed to justify the investigative stop of Fields; and thus, the trial court's denial of Fields' motion to dismiss was in error.

{¶25} Fields' assignments of error are, therefore, sustained.

{¶26} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**WILLAMOWSKI, J., concurs.**

**/jlr**

**SHAW, J., dissenting.**

{¶25} The majority seems to acknowledge that at a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. See *Carter*, 72 Ohio St.3d at 552, 651 N.E.2d 965. Moreover, as trier of fact, the trial court is clearly permitted to make reasonable inferences that naturally and logically follow from the evidence before it. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, superceded by state constitutional amendment on other grounds as stated in *State v. Smith* (1997), 80 Ohio St.3d 89, 684 N.E.2d 668.

{¶26} Unfortunately, in this case, the majority has effectively ruled that a trial court is not permitted to make inferences from the evidence as to whether a police officer had a reasonable, articulable suspicion. Because I do not believe the majority decision accurately reflects the law applicable to suppression hearings and because I do not believe the majority decision appropriately considers the totality of the evidence in the record regarding the initial investigation of the arresting officer, I respectfully dissent.

{¶27} Here, the trial court had the testimony of Calmes that he called 911 after observing the appellant's vehicle driving erratically. He then testified that he witnessed the red pickup truck "swerving pretty good," drive into someone's yard during an attempt to turn left, and make a "sweeping right-hand turn" after which the truck nearly hit another vehicle head-on but for the other vehicle swerving into the left lane in order to miss the truck. Calmes testified that he continued to follow the truck, and upon seeing the truck pull into a residence and park, he asked the 911 dispatcher if he should wait on the exit ramp until officers arrived. The dispatcher told him to wait, which he did.

{¶28} With regard to the foregoing, Calmes did not specifically testify that he remained on the phone the entire time - nor did he specifically testify that he related each of the foregoing observations to 911. The majority does not believe the trial court is permitted to infer from the existing testimony that Calmes

remained on the line the entire time - or that he related any of the observations to 911. I disagree.

{¶29} The officer who spoke with the appellant, Deputy Robison, also testified. Specifically, he was asked if he was advised of a possible OVI (operating a vehicle while under the influence) to which he responded in the affirmative. He further testified that he was given a description of the vehicle and the location of the residence in which the vehicle had parked, both of which coincided with Calmes' testimony. Deputy Robison then testified that he went to that location where he observed a vehicle matching the description given by his dispatch and matching the description testified to by Calmes. Again, the majority does not believe that the trial court is permitted to infer from this testimony that Calmes had related any of his observations of defendant's driving to 911 dispatch. I disagree.

{¶30} Once there, Deputy Robison briefly spoke with another officer. After this conversation, Deputy Robison went to the suspect vehicle while the other officer "went and spoke with the witness who was sitting on the ramp[.]" Robison then approached the red pickup truck and observed the appellant still inside the vehicle.

{¶31} I would note at this point in the evidence, that it is my view that Deputy Robison had testified to sufficient background information from dispatch,

coupled with his own independent observations on the scene - to establish a reasonable, articulable suspicion to approach the defendant and briefly detain him long enough to conduct a further investigation of the matter - regardless of any further details regarding Calmes' communications to dispatch. The majority disagrees and thus would have required Deputy Robison to allow defendant to walk from the vehicle into his house without detention or further inquiry.

{¶32} Nevertheless, once the appellant exited the vehicle, he went onto the porch of the residence and Robison instructed him to stay there. However, Robison testified that the appellant "had trouble following [his] instructions" and kept trying to enter the residence. In any event, the appellant did not enter the home, and Robison was able to speak with him. In speaking with him, Robison detected the odor of alcohol coming from his breath and other indicia of intoxication. After attempting to conduct two field sobriety tests,[1] Robison placed the appellant under arrest.

{¶33} The majority likens this case to this Court's decision in *State v. Bailey*, 3rd Dist. No. 8-07-92, 2008-Ohio-2254. In *Bailey*, this Court found that the arresting officer lacked probable cause for his arrest of the appellant for

---

[1] Robison testified that he attempted the horizontal gaze nystagmus but the appellant had trouble following his instructions, swayed during the giving of the instruction, and could not keep his eye on the pen. He also attempted the walk and turn test but the appellant started before Robison completed the instructions and would not hold the position as instructed. Throughout these attempts, the appellant repeatedly asked Robison why he was there despite being told the answer several times.

operating a vehicle while under the influence because the State failed to demonstrate that the law-enforcement community as a whole possessed facts constituting probable cause to arrest. Id. at ¶ 22. However, *Bailey* is distinguishable from the present case.

{¶34} In *Bailey*, a private citizen noticed erratic driving and called 911. Id. at ¶ 9. An officer in one jurisdiction began following the vehicle but did not stop the vehicle because it was out of his jurisdiction. Id. at ¶ 5. An officer from another jurisdiction stopped the vehicle, conducted field sobriety tests, and made the arrest. Id. However, Bailey passed two of the field sobriety tests and exhibited few, if any, other signs of intoxication. Id. at ¶¶ 5-6. To the contrary, he had the ability to understand and follow directions; the officer did not observe any impairment in his ability to communicate or speak; his clothes looked orderly and his face was not flushed; the officer failed to indicate in his report that Bailey's eyes were glassy and bloodshot; and Bailey was cooperative and polite. Id. at ¶ 6. Nevertheless, he was arrested.

{¶35} In this case, we are not called upon to determine whether there was probable cause to arrest; those are facts to ascertain once the appellant was stopped. Rather, the issue before us is the reasonableness of the investigatory "detention" of the appellant upon exiting his vehicle in his own driveway and walking onto his front porch. The majority correctly notes that a police officer

may conduct an investigative stop if he/she has reasonable, articulable suspicion of criminal activity. *State v. Bobo* (1988), 37 Ohio St.3d 177, 179, 524 N.E.2d 489; *Berkemer v. McCarty* (1984), 468 U.S. 420, 439-440, 104 S.Ct. 3138. "And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry v. Ohio* (1968), 392 U.S. 1, 21-22, 88 S.Ct. 1868, citing *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280; *Beck v. State of Ohio* (1964), 379 U.S. 89, 96-97, 85 S.Ct. 223. This standard does not rise to the level of probable cause to arrest.

{¶36} Even assuming *arguendo* that all of Calmes' specific observations had not been communicated to Deputy Robison via dispatch - or even that in the absence of direct testimony thereto, a trial court is not permitted to infer from other evidence that these observations were communicated to dispatch - Deputy Robison knew that there was a possible OVI and went to investigate the driving complaint. He also knew the location and description of the vehicle, he knew a witness had made the report and was, in fact, waiting nearby to speak with the police, and he found a vehicle matching the description given to him at the specific residence where he was told it would be. He also found the appellant exiting that vehicle. In my view, these facts clearly support a determination by the

trial court that Deputy Robison had reasonable, articulable suspicion of driving under the influence sufficient to briefly detain the defendant to investigate further. The observations made during the further investigation clearly supported the subsequent arrest.

{¶37} For these reasons, I would conclude that the trial court did not err when it overruled the appellant's motion to suppress. I would affirm the judgment of the trial court.

/jlr