[Cite as *State v. Steinbrunner*, 2012-Ohio-2358.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 2-11-27

    v.

BLAKE STEINBRUNNER,               **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Auglaize County Municipal Court
Trial Court No. 2010 TRC 07016

**Judgment Affirmed**

Date of Decision: May 29, 2012

APPEARANCES:

    *Andrew R. Bucher* for Appellant

    *R. Andrew Augsburger* for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant Blake Steinbrunner ("Steinbrunner") appeals the October 24, 2011 judgment of the Auglaize County Municipal Court sentencing him upon his conviction of operating a vehicle while under the influence of drugs and/or alcohol (also known as an "OVI"), in violation of R.C. 4511.19(A)(1)(d), a misdemeanor of the first degree.

{¶2} The facts relevant to this appeal are as follows. On December 4, 2010, shortly before 4 a.m., Mark Johns ("Johns") was in line at a McDonald's drive-thru in Wapakoneta behind a blue Hyundai later identified to be driven by Steinbrunner. While in line, Johns observed that the person in the vehicle in front of him was yelling and giving the employees at McDonald's a "hard time." Thinking that this person sounded drunk, and feeling sorry for the McDonald's workers, Johns decided to call the police.

{¶3} When Johns called the police, he identified himself giving his name and contact information. Johns further provided a description of the vehicle in front of him, which included the license plate number. Johns then told the dispatcher that he had observed the person in front of him in the McDonald's drive-thru for approximately fifteen minutes, that he "sound[ed] drunk as hell" and that he was "cussing" and "yelling."

{¶4} Officer Justin Marks ("Officer Marks") received a call from the dispatcher at roughly 3:52 a.m. alerting him to a possible impaired driver at McDonald's who was "yelling." When Officer Marks arrived at the McDonald's he pulled up past Johns while Johns was still on the phone with the dispatcher and identified the Steinbrunner vehicle. Shortly thereafter Steinbrunner pulled out of the McDonald's in the blue Hyundai. When Steinbrunner pulled out, Officer Marks quickly got the attention of the drive-thru attendant and asked the attendant whether the person in the car who had just pulled out was drunk or had been drinking. The drive-thru attendant responded, "oh yea."

{¶5} Officer Marks pulled out of the McDonalds and almost immediately turned on his lights and initiated an investigatory stop of Steinbrunner. Steinbrunner's blood alcohol concentration ("BAC") registered at .152, in excess of the legal limit. Steinbrunner was subsequently cited with operating a vehicle while under the influence of alcohol and/or drugs, in violation of R.C. 4511.19(A)(1)(a), and operating a vehicle with a concentration of eight-hundredths of one gram or more but less than seventeen hundredths of one gram by weight of alcohol per two hundred ten liters of breath (hereinafter "operating a vehicle with a prohibited BAC"), in violation of R.C. 4511.19(A)(1)(d), both misdemeanors of the first degree.

{¶6} On December 8, 2010, Steinbrunner entered pleas of not guilty to both charges. On April 14, 2011 Steinbrunner filed a motion to suppress alleging several reasons that evidence should be suppressed. A hearing was set on the motion for July 1, 2011. Prior to the hearing on the motion to suppress, the State and Steinbrunner agreed that there would only be one issue at the hearing, namely, whether there was a reasonable articulable suspicion to stop Steinbrunner based upon the citizen-informant call.

{¶7} On July 1, 2011 the hearing on the motion to suppress was held. At the hearing the State called Johns and Officer Marks. The State also entered into evidence the audio recording of Johns' call to the police and the recording of the traffic stop of Steinbrunner. Steinbrunner cross-examined both of the State's witnesses but did not put forth any evidence.

{¶8} On July 18, 2011 the trial court entered its judgment overruling Steinbrunner's motion to suppress.

{¶9} On October 24, 2011, Steinbrunner changed his plea to no contest to the charge of operating a vehicle with a prohibited BAC, in violation of 4511.19(A)(1)(d), and the State dismissed the remaining charge without prejudice. On that same date, Steinbrunner was found guilty of Operating a Vehicle with a prohibited BAC. Steinbrunner was subsequently sentenced to 20 days in jail, ordered to pay a fine of $875 and court costs, and his license was suspended for

Case No. 2-11-27

three months.[1] The sentence was stayed pending appeal. It is from this judgment that Steinbrunner appeals asserting the following assignment of error for our review.

### ASSIGNMENT OF ERROR

**THE TRIAL [COURT] ERRED IN WHEN (sic) IT FOUND THE SEIZURE OF MR. STEINBRUNNER DID NOT VIOLATE THE FOURTH AMENDMENT, [OF THE] UNITED STATES CONSTITUTION OR ARTICLE I, § 14 OF THE OHIO CONSTITUTION[.]**

{¶10} In his sole assignment of error, Steinbrunner contends that Officer Marks lacked reasonable suspicion to perform an investigatory stop and that therefore the trial court erred in overruling his motion to suppress. Specifically Steinbrunner claims Johns referred to a non-specific 'he' in his call to the police, that Johns' statement that the person in front of him in the drive-thru "sounds drunk as hell" was insufficient to justify an investigatory stop and that Officer Marks did not personally observe any traffic violation before stopping Steinbrunner.

{¶11} Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. *United States v. Martinez*, 949 F.2d 1117, 1119 (11th Cir.1992). At a suppression hearing, the trial court assumes the

---

[1] The court ordered all of the jail time and $500 of the fine suspended on the conditions that Steinbrunner complete a 72 hour driver intervention program, comply with any and all recommendations of the program, submit to alcohol testing whenever requested in conjunction with the operation of a vehicle, and that he not commit any criminal or jailable traffic offenses.

-5-

role of trier of fact, and is, therefore, in the best position to resolve questions of fact and evaluate witness credibility. *State v. Carter*, 72 Ohio St.3d 545, 552 (1995). As such, a reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. *State v. Guysinger*, 86 Ohio App.3d 592, 594 (4th Dist. 1993). The reviewing court then applies the factual findings to the law regarding suppression of evidence. *State v. Devanna*, 3d Dist. No 2-04-12, 2004-Ohio-5096, ¶ 9. An appellate court reviews the trial court's application of the law *de novo*. *State v. Anderson*, 100 Ohio App.3d 688, 691 (4th Dist. 1995).

{¶12} The Fourth and Fourteenth Amendments to the United States Constitution generally prohibit warrantless searches and seizures, and any evidence that is obtained during an unlawful search or seizure will be excluded from being used against the defendant. *Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684 (1961). At a suppression hearing, the State bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement, and that it meets Fourth Amendment standards of reasonableness. *City of Xenia v. Wallace*, 37 Ohio St.3d 216 (1988), at paragraph two of the syllabus; *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978); *City of Maumee v. Weisner*, 87 Ohio St.3d 295, 297 (1999) (Citation omitted).

{¶13} One exception to the warrant requirement is that a police officer may conduct an investigative stop if there is a reasonable articulable suspicion of criminal activity. *State v. Keck*, 3d. Dist. No. 5-03-27, 2004-Ohio-1396, ¶ 11; *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988); *Berkemer v. McCarty*, 468 U.S. 420, 439-440, 104 S.Ct. 3138 (1984). Notably the threshold is lower to justify an investigatory stop than it is for probable cause to arrest. *See State v. Devanna*, 3d. Dist. No. 2-04-12, 2004-Ohio-5096, ¶ 21. For an investigatory stop, an officer needs only "'specific and articulable facts which, taken together with rational inferences from those fac[ts], reasonably warrant [the] intrusion.'" *Maumee*, 87 Ohio St.3d at 299, quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

{¶14} In determining whether reasonable articulable suspicion exists, a reviewing court must look to the totality of the circumstances. *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). Under this analysis, a court should consider "both the content of the information possessed by police and its degree of reliability." *Maumee*, 87 Ohio St.3d at 299, quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412 (1990).

{¶15} An officer does not have to have personally observed a traffic violation or criminal activity to justify detaining someone; rather, an officer can rely on information transmitted to him through a dispatch or a flyer. *Maumee* at 297, quoting *United States v. Hensley*, 469 U.S. 221, 231, 105 S.Ct. 675, 681

(1985); *State v. Bailey*, 3d. Dist. No. 8-07-02, 2008-Ohio-2254, ¶ 17; *Devanna*, *supra*, at ¶ 13. Moreover, "[a] telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability." *Maumee*, *supra*, at paragraph two of the syllabus. In expanding upon this issue, the Ohio Supreme Court held in *City of Maumee v. Weisner* that

> **the admissibility of the evidence uncovered during \* \* \* a stop does not rest upon whether the officers *relying upon a dispatch or a flyer* "were themselves aware of the specific facts which led their colleagues to seek assistance." It turns instead upon "whether the officers who *issued* the flyer" or dispatch possessed reasonable suspicion to make the stop.**

*Id*. at 297, quoting *Hensley, supra* at 231. (Emphasis sic.)

{¶16} In this case, on December 4, 2010 shortly before 4 a.m. Mark Johns was in line at a McDonald's drive-thru in Wapakoneta behind a vehicle later identified to be driven by Steinbrunner. (Tr. at 11). While in line Johns observed the person in front of him giving the McDonald's employees a "hard time." (Id.) Johns said that the person was "out of control" and sounded drunk so Johns called the police. (State's Ex. A).

{¶17} When Johns called the police, he spoke with a dispatcher and gave the dispatcher his name and contact information. (State's Ex. A). Johns identified the vehicle that was still in front of him in the McDonald's drive-thru as a blue Hyundai and provided the license plate number. (Id.) Johns told the dispatcher that the person in front of him was "cussing and yelling up a storm" and that the

person "sounds drunk as hell." (Id.) Johns said that he had been observing the person in front of him for approximately fifteen minutes and further described the person in front of him as "out of control." (Id.) Johns never specifically said "the driver" of the blue Hyundai on the call to the police; however, Johns did testify at the suppression hearing that he was aware another person was in the Hyundai when he made the call. (Tr. at 11).

{¶18} While Johns was still speaking with the dispatcher, the dispatcher notified Officer Marks, who was in the area, of a possible ".19," meaning a possible impaired driver, and that the person was "yelling." (Tr. at 15-16) In addition, the dispatcher relayed the vehicle's description and its license plate number to Officer Marks. (Id.) Less than two minutes later, while Johns was still on the phone with the dispatcher, Officer Marks arrived at the McDonald's. (State's Ex. A). When Johns saw the officer arrive he got off the phone. (Id.)

{¶19} Officer Marks waited while Steinbrunner's car exited the drive-thru. (Tr. at 16). Officer Marks then pulled up to the drive-thru window and got the attention of the drive-thru attendant and asked if the driver of the blue Hyundai was drunk or if he had been drinking. (Id.) The drive-thru attendant responded, "oh yea." (Tr. at 17). At that point, Officer Marks left the McDonald's and pursued Steinbrunner. (Tr. at 18). Almost immediately Officer Marks turned on his overhead lights and initiated an investigatory stop. (Id.) Officer marks

testified that he stopped Steinbrunner's vehicle within 100 yards of the McDonald's. (Tr. at 30).

{¶20} On appeal, Steinbrunner specifically challenges the validity of the investigatory stop, not his subsequent arrest. Steinbrunner claims Johns referred to a non-specific 'he' in his call to the police, that Johns' statement that the person in front of him in the drive-thru "sounds drunk as hell" was insufficient to justify a stop and that Officer Marks did not personally observe any traffic violation before stopping Steinbrunner.

{¶21} Despite Steinbrunner's claims to the contrary, there is more evidence than Johns' statement that the person in front of him in the drive through "sounds drunk as hell" to create a reasonable articulable suspicion of criminal activity. On Johns' call to the dispatcher, which was entered into evidence at the suppression hearing, Johns specifically identified himself and the car in front of him.[2] (State's Ex. A). In addition, Johns said the person in front of him was "out of control," "cussing" and "yelling" for approximately fifteen minutes prior to Johns making the call. (State's Ex. A). Moreover, Officer Marks came to the McDonald's drive-thru while Johns was still speaking with the dispatcher and was able to observe where Steinbrunner's vehicle was in line. (Tr. at 16). Then, when Steinbrunner exited the McDonald's, Officer Marks quickly got the attention of

---

[2] It was conceded by Steinbrunner in his brief that Johns was an identified citizen informant.

the drive-thru attendant and asked if the driver was drunk or had been drinking. (Tr. at 17). The attendant responded "oh yea." (Id.) Later, Officer Marks returned to the McDonalds and identified the McDonalds employee. (Id.)

{¶22} The record makes clear that the tip itself contains more information than Steinbrunner argues; however, the record also makes clear that Officer Marks was not relying solely on the tip. Officer Marks was also able to get some corroboration from the McDonald's attendant that the tip was accurate. It was only after this corroboration that Officer Marks initiated the investigatory stop. Based on the foregoing, under the totality of the circumstances, we hold that there was a reasonable articulable suspicion of criminal activity for Officer Marks to conduct an investigatory stop.

{¶23} For the foregoing reasons, Steinbrunner's assignment of error is overruled and the judgment of the Municipal Court of Auglaize County is affirmed.

***Judgment Affirmed***

**PRESTON, J., concurs.**

**WILLAMOWSKI, J., concurs in Judgment Only.**

**/jlr**