[Cite as *State v. Brennco, Inc.*, 2015-Ohio-467.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                  CASE NO.  1-14-24

      v.

BRENNCO, INC.,                              O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Lima Municipal Court
Trial Court No. 13CRB01880

Judgment Affirmed

Date of Decision:   February 9, 2015

APPEARANCES:

    *Michael A. Rumer and Anthony J. Miller* for Appellant

    *Robert W. Cheugh, II and Kenneth H. Egbert, Jr.*  for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant, a company called Brennco, Inc. ("Brennco") brings this appeal from the judgment of the Lima Municipal Court in Allen County, Ohio, denying its motion, captioned "Motion to Dismiss and Motion to Suppress" and finding it guilty of water pollution in violation of R.C. 6111.04(A)(1), upon Brennco's entry of a no contest plea. For the reasons that follow, we affirm the trial court's judgment.

### Facts and Procedural History

{¶2} According to the facts presented to us, Brennco is an incorporated farm operation engaged in raising hogs and producing grain crops. On November 11, 2011, Brennco initiated the application of hog manure onto one of its fields by use of a traveling gun applicator. The application resulted in a prohibited amount of manure seeping into a nearby creek, called Pigeon Run, and subsequently into the Auglaize River. The discharge caused a fish kill in the river.

{¶3} On June 10, 2013, the State of Ohio ("the State") filed a complaint in the Lima Municipal Court, alleging that Brennco engaged in water pollution in violation of R.C. 6111.04(A)(1), an unclassified misdemeanor "with a penalty up to $25,000.00 per day of violation." (R. at 1, Compl.) Brennco entered a plea of not guilty and requested a jury trial. After initial discovery and a pretrial, Brennco filed its motion to dismiss and to suppress. As the basis for the motion to dismiss, Brennco alleged that the maximum statutory fine for violation of R.C. 6111.04

exceeds the jurisdictional limits of the Lima Municipal Court, thereby divesting the municipal court of jurisdiction over the action. With respect to the suppression issue, Brennco requested suppression of any evidence "that the defendant's traveling gun land application equipment constitutes 'a point discharge of the pollutant' causing pollution of the waters of the State of Ohio." (R. at 34.) In support of its request to suppress, Brennco alleged that a provision of R.C. 6111.04(F)(3) exempts it from liability. The trial court held a hearing and subsequently, denied both motions. Brennco then entered a no contest plea and was found guilty.

{¶4} Brennco filed the instant appeal, alleging the following assignments of error.

### ASSIGNMENT OF ERROR NO. 1

**The trial court erred when it denied defendant's motion to dismiss this case for want of subject matter jurisdiction of a prosecution pursuant to R. C. 6111.04(A)(1).**

### ASSIGNMENT OF ERROR NO. 2

**The trial court erred when it determined the exception to R. C. §6111.04(A)(1) set forth in R. C. §6111.04(F)(3) does not apply in this case.**

### ASSIGNMENT OF ERROR NO. 3

**The trial court erred when it failed to apply the rule of lenity and liberally apply R. C. §6111.04(F)(3) in favor of Brennco.**

### *First Assignment of Error—*
### *Jurisdiction of the Municipal Court*

**{¶5}** In its first assignment of error Brennco challenges jurisdiction of the Lima Municipal Court asserting that the monetary limitations set forth in R.C. 1901.17 precluded the court from hearing this case. R.C. 1901.17 limits jurisdiction of municipal courts to cases where the amount in controversy does not exceed $15,000.00. This Revised Code section states, in relevant part:

> A municipal court shall have original jurisdiction only in those cases in which the amount claimed by any party, or the appraised value of the personal property sought to be recovered, does not exceed fifteen thousand dollars, except that this limit does not apply to the housing division or environmental division of a municipal court.

R.C. 1901.17. Because the maximum fine for a violation of R.C. 6111.04 is $25,000.00, Brennco argues that it exceeds the jurisdiction of the Lima Municipal Court.

**{¶6}** We must determine whether the monetary limits of R.C. 1901.17 apply to the case before us. Because this issue involves the interpretation of a statute, which is a question of law, we review the trial court's judgment de novo. *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 9 (2014); *State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9 (2013). When interpreting a statute, we must "determine and give effect to the legislative intent." *Straley* at ¶ 9. To determine the legislative intent, we first look at the language of

the statute itself and if the language is clear and unambiguous, we apply it as written and no further construction is required. *Id.*; *Pariag* at ¶ 11.

**{¶7}** Looking at the clear language of R.C. 1901.17, it does not appear that the monetary limitation stated therein precluded the Lima Municipal Court from hearing this case. R.C. 1901.17 limits a municipal court's jurisdiction to "those cases in which the amount *claimed* by any party, or the appraised value of the personal property sought to be recovered, does not exceed fifteen thousand dollars." (Emphasis added.) In this case, no party claimed any monetary amounts or sought to recover any property. The criminal complaint filed by the State alleges the violation of R.C. 6111.04(A)(1) and states that the violation constitutes "a charge of water pollution." (R. at 1, Compl.) Although the complaint further recites the maximum penalty that could be imposed for the violation, the State does not "claim" this amount as its damages.

**{¶8}** The State submits that the monetary limitation of R.C. 1901.17 applies to civil actions only, as those are the actions in which a party will "claim" monetary damages. We agree.

**{¶9}** The Ohio Supreme Court has acknowledged that municipal courts are creatures of statute and that while R.C. 1901.18 is the statute that creates municipal courts as it relates to "civil matters," R.C. 1901.20 provides for their creation as it relates to "criminal and traffic matters." *State v. Cowan*, 101 Ohio St.3d 372, 2004-Ohio-1583, 805 N.E.2d 1085, ¶ 11 (2004). R.C. 1901.20 states

that "[t]he municipal court has jurisdiction * * * of the violation of any misdemeanor committed within the limits of its territory." R.C. 1901.20(A)(1). Because the violation of R.C. 6111.04 is a misdemeanor, jurisdiction exists. *See State v. McLaughlin*, 109 Ohio App.3d 868, 870, 673 N.E.2d 234 (9th Dist.1996) (recognizing that pollution in violation of R.C. 6111.04 is a misdemeanor).

{¶10} Brennco argues that a municipal court's jurisdiction over misdemeanors under R.C. 1901.20 is subject to the monetary limitation of R.C. 1901.17. This assertion has no support in the language of the statute. R.C. 1901.18, which creates jurisdiction of municipal courts over civil matters, states that the jurisdiction is "subject to the monetary jurisdiction of municipal courts as set forth in section 1901.17 of the Revised Code." *See also* R.C. 1901.19 (listing jurisdictional powers of municipal courts, which are "[s]ubject to the monetary jurisdiction of municipal courts as set forth in section 1901.17 of the Revised Code"). Conversely, R.C. 1901.20 does not include similar language, stating instead that "[t]he municipal court has jurisdiction * * * of the violation of *any* misdemeanor committed within the limits of its territory." (Emphasis added.) R.C. 1901.20(A)(1).

{¶11} The Tenth District Court of Appeals employed the following reasoning upon an argument that the municipal court had "no monetary/subject-matter jurisdiction over the case":

R.C.1901.18 establishes the subject-matter jurisdiction regarding civil cases and notes that said jurisdiction is subject to the monetary jurisdiction set forth in R.C.1901.17. R.C.1901.17 states that "[a] municipal court shall have original jurisdiction only in those cases in which the amount claimed by any party, or the appraised value of the personal property sought to be recovered, does not exceed fifteen thousand dollars."

R.C.1901.20(A)(1) establishes the municipal court's subject-matter jurisdiction in criminal and traffic cases and states that "[t]he municipal court has jurisdiction of the violation of any ordinance of any municipal corporation within its territory * * * and of the violation of any misdemeanor committed within the limits of its territory."

The case pending in municipal court is a traffic case involving misdemeanor offenses.

*State ex rel. Johnson v. Franklin Cty. Mun. Court*, 10th Dist. Franklin No. 14AP-219, 2014-Ohio-3308, ¶ 5-8 (overruling objections to the magistrate's decision and denying a writ of mandamus to order dismissal of a criminal case by the Franklin County Municipal Court).

{¶12} Brennco is dissatisfied with the statute's language, which does not clearly express that the monetary limits of R.C. 1901.17 apply to civil cases *only*. Yet, the only reading of the statute, clearly and unambiguously dictates that the monetary limits do not apply to criminal cases where there is no "amount claimed by any party" to be limited. Therefore, we apply the statute as written and hold that R.C. 1901.17 did not divest the Lima Municipal Court of jurisdiction over the instant case. Accordingly, the trial court did not err when it denied Brennco's motion to dismiss this case for want of subject matter jurisdiction.

**{¶13}** The first assignment of error is overruled.

***Second and Third Assignments of Error—***
***Denial of Motion to Suppress***

**{¶14}** Before we address the substantive arguments raised here, we elect to raise a procedural issue sua sponte. Brennco filed a motion to suppress, requesting suppression of any evidence "that the defendant's traveling gun land application equipment constitutes 'a point discharge of the pollutant' causing pollution of the waters of the State of Ohio." (R. at 34.) The request to suppress evidence was based on a possible defense to the charge, an argument that that a provision of R.C. 6111.04(F)(3) exempts it from liability. We note that "[a] motion to suppress is '[a] request that the court prohibit the introduction of illegally obtained evidence at a criminal trial.' " *State v. Echard*, 9th Dist. Summit No. 24643, 2009-Ohio-6616, ¶ 3, citing Black's Law Dictionary 1039 (8th ed.2004); Crim.R. 12(C)(3). Brennco did not argue that the evidence relating to its "traveling gun land application equipment" was illegally obtained. Its arguments, more appropriately, can be classified as defenses to the charges. These arguments were thus not properly raised in the motion to suppress and the trial court should have refused to consider the motion. However, because the State raised no objections to this improper use of the motion to suppress by Brennco, we do not remand this case to the trial court, as that would unfairly benefit the party which committed the error. *See State ex rel. Beaver v. Konteh*, 83 Ohio St.3d 519, 521, 1998-Ohio-295, 700 N.E.2d 1256 (1998) ("Under the

invited-error doctrine, a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make.") Therefore, we review the challenges on appeal under the standard of review for a motion to suppress, but our review should not be read as an endorsement of such use of this procedural device.

{¶15} Brennco's argument in his motion to suppress concerned the language of R.C. 6111.04, which prohibits pollution of any waters of the state. *See* R.C. 6111.04(A). This section of the Revised Code has several exemptions. First, the prohibition against polluting the waters of the state does not apply if the person causing pollution "holds a valid, unexpired permit, or renewal of a permit, governing the causing or placement as provided in sections 6111.01 to 6111.08 of the Revised Code or if the person's application for renewal of such a permit is pending." R.C. 6111.04(A). It is undisputed that Brennco did not hold such a permit. Therefore, the first exemption does not absolve it from liability. Second, subsection (F) of R.C. 6111.04 lists eight exceptions to liability for water pollution. As relevant to this appeal, subsection (F)(3) states that the prohibition against water pollution does not apply to:

> Application of any materials to land for agricultural purposes or *runoff* of the materials from that application or *pollution by animal waste*[1] or soil sediment, including attached substances, resulting from farming, silvicultural, or earthmoving activities regulated by Chapter 307. or 1511. of the Revised Code. Division (F)(3) of this section does not authorize, without a permit, any discharge that is

---

[1] The language of this statute has been revised and the current wording differs slightly, using the terms, "residual farm products, manure," instead of "animal waste." The amendment has no effect on the current appeal.

prohibited by, or for which a permit is required by, the Federal Water Pollution Control Act or regulations adopted under it.

(Emphasis added.) R.C. 6111.04(F)(3).

*Interpretation of the Statutory Language*
*of R.C. 6111.04(F)(3)*

{¶16} Brennco asserts that its activities constituted "runoff" of the application of materials to land for agricultural purposes or "pollution by animal waste" resulting from farming activities. Acknowledging the second sentence of R.C. 6111.04(F)(3), which states that the above exception "does not authorize, without a permit, any discharge that is prohibited by, or for which a permit is required by, the Federal Water Pollution Control Act," Brennco argues that the above statutory language is ambiguous. As such, it should be construed against the State.

{¶17} We again turn to the interpretation of the statutory language. As stated in our discussion of the first assignment of error, we employ the de novo standard of review and look at the statutory language to "determine and give effect to the legislative intent." *Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, at ¶ 9. If the legislative intent is clearly expressed, " 'the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged; significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act * * *.' " *State ex rel. McGraw v. Gorman*, 17 Ohio St.3d 147, 149, 478 N.E.2d

770 (1985), quoting *Wachendorf v. Shaver*, 149 Ohio St. 231, 78 N.E.2d 370 (1948), paragraph five of the syllabus.

**{¶18}** Brennco sees ambiguity in the fact that the second sentence of subsection (F)(3) could possibly be read in two ways. (*See* App't Br. At 17-18.) First, if you don't fall under one of the exceptions for farming activities listed in the first sentence of subsection (F)(3), you need a permit. Here, Brennco alleges that it fell under the farming activities exception and so, no permit was required. Second, even if you fall under one of the exceptions for farming activities, you still need a permit. This construction would result in Brennco being required to obtain a permit, even thought its activities fell within the exceptions listed in the first sentence of R.C. 6111.04(F)(3). Brennco objects to this second suggested interpretation as superfluous, and urges us to resolve the ambiguity in its favor, applying the first interpretation outlined above.

**{¶19}** We do not read subsection (F)(3) as ambiguous. Although the many exceptions and qualifications to these exceptions make the language of R.C. 6111.04 somewhat difficult to read, our understanding of the clear statutory language can be summarized as follows. In general, one needs a permit before they can pollute the waters of the state. R.C. 6111.04(A). One does not need a permit, however, if they cause pollution of the type listed in the first sentence of R.C. 6111.04(F)(3), resulting from farming activities. The second sentence of R.C. 6111.04(F)(3) prohibits any *discharge* that violates the Federal Water

Pollution Control Act (commonly referred to as the Clean Water Act, hereinafter "CWA"), or regulations adopted under it. Therefore, when a person engages in farming activities and "manure stays on fields for its beneficial purpose of providing nutrients to crops * * * no violation of R.C. 6111.04 occurs," as it is excepted under the first sentence of R.C. 6111.04(F)(3). (App'e Br. at 22.) But if a person who engages in farming activities permissible under the first sentence of R.C. 6111.04(F)(3) causes the type of "discharge" prohibited by the CWA, without a permit, they are liable for water pollution.

{¶20} Because there is no ambiguity in the statute, the premise of Brennco's argument in the third assignment of error fails. Therefore, the third assignment of error is overruled.

> *b. Application of the Statutory Language of the Clean Water Act,*
> *as it is Referenced in R.C. 6111.04(F)(3), to the Case at Issue*

{¶21} The issue then becomes what "discharge" is prohibited by the CWA or regulations adopted under it and whether it occurred in the instant case. We now turn to the federal statute. The parties agree that the relevant sections of the CWA prohibit discharge of *any pollutant* without a permit issued by the "Administrator." 33 U.S.C. 1342; 33 U.S.C. 1311(a). Because manure is a pollutant under 33 U.S.C. 1362(6) (*see, e.g.*, *Concerned Area Residents for The Environment v. Southview Farm*, 834 F.Supp. 1410, 1416-1417 (W.D.N.Y.1993)), and Brennco did not have a permit, the only remaining issue is whether the

discharge of that pollutant occurred in this case, so as to make Brennco liable for pollution in spite of the exception for farming activities in R.C. 6111.04(F)(3).

{¶22} The CWA has a separate definition for the term "discharge of a pollutant." It states:

> The term "discharge of a pollutant" and the term "discharge of pollutants" each means (A) any addition of any pollutant to navigable waters *from any point source * * *.*

(Emphasis added.) 33 U.S.C. 1362(12). The dispute between the parties concerns the definition and use of the term "point source" and whether the traveling gun applicator used by Brennco constituted such a point source. The CWA defines "point source" as

> any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. *This term does not include agricultural stormwater discharges and return flows from irrigated agriculture.*

(Emphasis added.) 33 U.S.C. 1362(14). The State maintains that the traveling gun applicator and the field tile, "which directly conveyed the manure into Pigeon Run," constitute a point source. (App'ee Br. at 14.) Brennco focuses on the last sentence of the definition and contends that the discharge that occurred on the day at issue was "agricultural stormwater discharge" and as such, it was exempted from the definition of point source under the express language of the above definition.

- 13 -

**{¶23}** The CWA does not define the term "agricultural stormwater discharge." Cases that concerned this exception to the CWA explain that "[t]his occurs, for example, when rainwater comes in contact with manure and flows into navigable waters." *Natl. Pork Producers Council v. U.S. E.P.A.*, 635 F.3d 738, 743 (5th Cir.2011), citing *Fishermen Against Destruction of Env't, Inc. v. Closter Farms, Inc.,* 300 F.3d 1294, 1297 (11th Cir.2002), and *Concerned Area Residents for the Env't v. Southview Farm,* 34 F.3d 114, 121 (2d Cir.1994). The trial court reviewed Brennco's assertion of the agricultural stormwater discharge exemption and found that

> [i]n this case, there were no facts that would establish that the pollution was caused by stormwater runoff. There was no rain on the date of the event. Mr. Brenneman saw some discharge before the application of manure, but he further stated that the discharge after the manure was applied was different and distinct from the prior discharge. Therefore, the stormwater runoff exception does not apply to the case.

(R. at 41, J. Entry at 4.) The trial court further found that "[t]he source of this pollution is discernable [sic] and it was not the result of any stormwater or natural runoff. The court therefore finds that this runoff was from a point source." (*Id.* at 5.) Upon this finding, the trial court concluded that the exception for farming activities in R.C. 6111.04(F)(3) does not apply and overruled Brennco's motion to suppress.

**{¶24}** An appellate review of the trial court's decision on a motion to suppress involves a mixed question of law and fact. *State v. Burnside,* 100 Ohio

- 14 -

St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Norman,* 136 Ohio App.3d 46, 51, 735 N .E.2d 953 (3d Dist.1999). We will accept the trial court's factual findings if they are supported by competent, credible evidence because the "evaluation of evidence and the credibility of witnesses" at the suppression hearing are issues for the trier of fact. *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992); *Burnside* at ¶ 8; *Norman* 51. But we must independently determine, without deference to the trial court, whether these factual findings satisfy the legal standard as a matter of law because "the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review." *Burnside* at ¶ 8; *Norman* at 52.

{¶25} The issue of whether a discharge occurred from a point source is a question of fact. *Williams Pipe Line Co. v. Bayer Corp.*, 964 F.Supp. 1300, 1318 (S.D.Iowa 1997), citing *Concerned Area Residents for The Environment v. Southview Farm*, 834 F.Supp. 1410, 1417-18 (W.D.N.Y.1993); *In the Matter of Chevron U.S.A. Inc., Barbers Point Refinery, Honolulu, Hawaii, Respondent*, U.S. E.P.A. No. IX-FY88-54, 1990 WL 752777, *1, fn. 20 (May 3, 1990), citing *U.S. v. Standard Oil Co.*, 384 U.S. 224, 226, 86 S.Ct. 1427, 16 L.Ed. 2d 492 (1966). Therefore, under the standard for reviewing the trial court's decision on the motion to suppress, we must accept the trial court's finding that the discharge in this case occurred from a point source, unless this finding is unsupported by the evidence.

{¶26} Our review of the record supports the trial court's findings that there was no evidence of rain on November 11, 2011 (*see* Tr. at 10, 25), and that no evidence established that the runoff at issue was a result of rainwater coming into contact with manure and flowing into navigable waters. Accordingly, we affirm the trial court's conclusion that the runoff here was from a discernible conveyance, i.e., a traveling gun applicator, which overapplied the liquid manure onto the field. The fact that some stormwater might have been on the field prior to the overapplication of the manure and that the manure came into contact with that stormwater does not create the "agricultural stormwater discharge" exception. This exception is for the situations when rainfall, combined with *proper* application of the manure, causes the runoff, rather than for the situations when overapplication of the manure and the runoff happen to coincide with some rainfall. *See Southview Farm*, 34 F.3d 114, 120 ("while the statute does include an exception for 'agricultural stormwater discharges,' there can be no escape from liability for agricultural pollution simply because it occurs on rainy days").

> We think the real issue is not whether the discharges occurred during rainfall or were mixed with rain water run-off, but rather, whether the discharges were the result of precipitation. Of course, all discharges eventually mix with precipitation run-off in ditches or streams or navigable waters so the fact that the discharge might have been mixed with run-off cannot be determinative.

*Id.* at 120-121.

**{¶27}** Based upon the foregoing, we affirm the trial court's conclusion that the runoff on Brennco's farm of November 11, 2011, does not amount to "agricultural stormwater discharge" and therefore, is not exempted from the point source definition of the CWA. As a result, Brennco is not exempted from liability under the exception of R.C. 6111.04(F)(3), which allows for farming activities causing runoff or pollution by animal waste as long as they do not violate the CWA. This being the only basis for Brennco's suppression request, we hold that the trial court properly denied its motion to suppress and we overrule the second assignment of error.

## *Conclusion*

**{¶28}** Having reviewed the arguments, the briefs, and the record in this case, we find no error prejudicial to Appellant in the particulars assigned and argued. The judgment of the Lima Municipal Court in Allen County, Ohio, is therefore affirmed.

*Judgment Affirmed*

**ROGERS, P.J. and PRESTON, J., concur.**

**/jlr**