[Cite as *State v. Miller*, 2015-Ohio-3529.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLANT,            CASE NO. 9-14-50

      v.

BRYAN S. MILLER,                     O P I N I O N

      DEFENDANT-APPELLEE.

Appeal from Marion County Common Pleas Court
Trial Court No. 14CR452

Judgment Reversed and Cause Remanded

Date of Decision: August 31, 2015

APPEARANCES:

    *Brent W. Yager* for Appellant

    *Jon L. Jensen* for Appellee

**PRESTON, J.**

{¶1} Plaintiff-appellant, the State of Ohio, appeals the December 22, 2014 judgment entry of the Marion County Court of Common Pleas granting defendant-appellee's, Bryan S. Miller ("Miller"), motion to suppress. For the reasons that follow, we reverse.

{¶2} This case stems from a January 14, 2014 traffic stop of Miller's vehicle by Ohio Highway State Patrol Trooper Joshua Beynon ("Trooper Beynon") after Miller failed to stop at a clearly marked stop line. As a result of the traffic stop, Miller was indicted on October 9, 2014 for possession of heroin in violation of R.C. 2925.11(A), (C)(6), a second-degree felony. (Doc. No. 1).

{¶3} On November 21, 2014, Miller appeared for arraignment and entered a plea of not guilty. (Doc. No. 21).

{¶4} On December 11, 2014, Miller filed a motion to suppress. (Doc. No. 24). The State filed a response to Miller's motion to suppress that same day. (Doc. No. 25). After a hearing on December 12, 2014, the trial court granted Miller's motion to suppress on December 22, 2014. (Doc. No. 27).

{¶5} The State filed its notice of appeal on December 23, 2014. (Doc. No. 28). It raises one assignment of error for our review.

**Assignment of Error**

**The Trial Court Abused its Discretion by Granting the Defendant/Appellees' Motion to Suppress the Traffic Stop and by Applying the Exclusionary Rule.**

{¶6} In its assignment of error, the State argues that the trial court abused its discretion by granting Miller's motion to suppress because Trooper Beynon had a reasonable articulable suspicion to stop Miller. In the alternative, the State argues that if Trooper Beynon mistakenly applied R.C. 4511.43(A) to stop Miller, the exclusionary rule does not apply since Trooper Beynon was acting in good faith because he reasonably and mistakenly applied R.C. 4511.43(A).

{¶7} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo; and therefore, we must decide whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997). "De novo review

-3-

is independent, without deference to the lower court's decision." *State v. Robertson*, 3d Dist. Henry No. 7-14-16, 2015-Ohio-1758, ¶ 17, quoting *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27.

{¶8} Because the facts are not in dispute, we proceed directly to reviewing de novo the trial court's conclusion that Trooper Beynon did not have a reasonable articulable suspicion to stop Miller.

{¶9} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution generally prohibit warrantless searches and seizures, and any evidence that is obtained during an unlawful search or seizure will be excluded from being used against the defendant. *State v. Jenkins*, 3d Dist. Union No. 14-10-10, 2010-Ohio-5943, ¶ 9; *State v. Steinbrunner*, 3d Dist. Auglaize No. 2-11-27, 2012-Ohio-2358, ¶ 12.

> Neither the Fourth Amendment to the United States Constitution nor Section 14, Article I of the Ohio Constitution explicitly provides that violations of its provisions against unlawful searches and seizures will result in the suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment.

*Jenkins* at ¶ 9, citing *Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684 (1961) and *Weeks v. United States*, 232 U.S. 383, 394, 34 S.Ct. 341 (1914).

**{¶10}** "A traffic stop constitutes a seizure and implicates the protections of the Fourth Amendment" but "'is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime.'" *State v. Dillehay*, 3d Dist. Shelby No. 17-12-07, 2013-Ohio-327, ¶ 13, citing *State v. Johnson*, 3d Dist. Hancock No. 5-07-43, 2008-Ohio-1147, ¶ 16; *State v. Aldridge*, 3d Dist. Marion No. 9-13-54, 2014-Ohio-4537, ¶ 10, quoting *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 7. "The Supreme Court of Ohio has defined 'reasonable articulable suspicion' as 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion [upon an individual's freedom of movement].'" *State v. Shaffer*, 3d Dist. Paulding No. 11-13-02, 2013-Ohio-3581, ¶ 18, quoting *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988). "In determining whether reasonable articulable suspicion exists, a reviewing court must look to the totality of the circumstances." *Steinbrunner* at ¶ 14, citing *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). "A police officer's testimony alone is sufficient to establish reasonable articulable suspicion for a stop." *State v. McClellan*, 3d Dist. Allen No. 1-09-21, 2010-Ohio-314, ¶ 38, citing *State v. Claiborne*, 2d Dist. Montgomery No. 19060, 2002-Ohio-2696.

**{¶11}** In addition to a reasonable and articulable suspicion of criminal activity, "[p]robable cause is certainly a complete justification for a traffic stop,"

but it is not required to justify a traffic stop. *Mays* at ¶ 23. "Probable cause" is a stricter standard than "reasonable and articulable suspicion" and subsumes "reasonable and articulable suspicion." *Id.*, citing *State v. Evans*, 67 Ohio St.3d 405, 411 (1993). Accordingly, "an officer who witnesses a traffic violation possesses probable cause, and a reasonable articulable suspicion, to conduct a traffic stop." *State v. Haas*, 3d Dist. Henry No. 7-10-15, 2012-Ohio-2362, ¶ 16, citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002). *See also Mays* at ¶ 24.

{¶12} Here, Trooper Beynon stopped Miller for violating R.C. 4511.43(A), which provides, in relevant part:

> Except when directed to proceed by a law enforcement officer, every driver of a vehicle * * * approaching a stop sign *shall stop at a clearly marked stop line*, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it.

(Emphasis added.) Because the parties dispute whether Miller stopped *at* a clearly marked stop line under R.C. 4511.43(A), we must determine what is required of a motorist under R.C. 4511.43(A). We review de novo the interpretation of a statute. *Robertson*, 2015-Ohio-1758, at ¶ 17, citing *State v. Brennco, Inc.*, 3d Dist.

Allen No. 1-14-24, 2015-Ohio-467, ¶ 6, citing *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 9 and *State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, ¶ 9; *State v. Thornsbury*, 4th Dist. Lawrence No. 12CA9, 2013-Ohio-1914, ¶ 8.

**{¶13}** "'"The primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute."'" *Robertson* at ¶ 18, quoting *Thornsbury* at ¶ 8, quoting *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 9. *See also Brennco, Inc.* at ¶ 6. "To determine the legislative intent, we first look at the language of the statute itself and if the language is clear and unambiguous, we apply it as written and no further construction is required." *Id.*, quoting *Brennco, Inc.* at ¶ 6, citing *Straley* at ¶ 9 and *Pariag* at ¶ 11.

**{¶14}** However, "[a] statute is ambiguous if its language is susceptible to more than one reasonable interpretation." *Id.*, quoting *Thornsbury* at ¶ 8, citing *State ex rel. Toledo Edison Co. v. Clyde*, 76 Ohio St.3d 508, 513 (1996). "Only if a statute is unclear and ambiguous, may we interpret it to determine the legislature's intent." *Id.*, quoting *Thornsbury* at ¶ 8, citing *State v. Chappell*, 127 Ohio St.3d 376, 2010-Ohio-5991, ¶ 16. *See also State v. Black*, 142 Ohio St.3d 332, 2015-Ohio-513, ¶ 38 ("If a statute is ambiguous, 'courts seek to interpret the statutory provision in a manner that most readily furthers the legislative purpose as reflected in the wording used in the legislation.'"), quoting *Clyde* at 513.

{¶15} If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

(A)   The *object sought to be attained*;

(B)   The circumstances under which the statute was enacted;

(C)   The legislative history;

(D)   The common law or former statutory provisions, including laws upon the same or similar subjects;

(E)   The *consequences* of a particular construction;

(F)   The *administrative construction* of the statute.

(Emphasis added.)  R.C. 1.49.

{¶16} The Revised Code does not define "at" or what it means to stop *at* a clearly marked stop line.  "In the absence of a definition of a word or phrase used in a statute, words are to be given their common, ordinary, and accepted meaning."  *Black* at ¶ 39, citing *Wachendorf v. Shaver*, 149 Ohio St. 231 (1948), paragraph five of the syllabus.

{¶17} There is little guidance available regarding the common, ordinary, and accepted meaning of what it means to stop *at* a clearly marked stop line.  In particular, the Supreme Court of Ohio has not addressed the proper interpretation of R.C. 4511.43(A) or what it means to stop *at* a clearly marked stop line.  The current edition of Black's Law Dictionary also does not define "at."  However,

"at" is defined by Merriam-Webster's Collegiate Dictionary as "used as a function word to indicate presence or occurrence *in, on, or near*." (Emphasis added.) *Merriam-Webster's Collegiate Dictionary* 77 (11th Ed.2009). Stopping "in, on, or near" can mean a multitude of things. Accordingly, we conclude that R.C. 4511.43(A)'s requirement that a motorist stop *at* a clearly marked stop line is reasonably susceptible to more than one interpretation.

{¶18} That stopping *at* a clearly marked stop line is reasonably susceptible to more than one interpretation is demonstrated by the split of courts on the issue. In interpreting nearly identical stop-sign statutes, some courts have concluded that so long as a driver stops on or near a clearly marked stop line, he or she is in compliance with the statute. *See, e.g.*, *State v. Drushal*, 9th Dist. Wayne No. 13CA0028, 2014-Ohio-3088, ¶ 12, *abrogated on other grounds by Heien v. North Carolina*, __ U.S. __, 135 S.Ct. 530 (2014); *City of Olathe v. McGregor*, Ks.App. No. 108, 316, 2013 WL 5870040, *3 (Oct. 25, 2013); *Mumper v. State*, Tx.App. No. 05-08-00141-CR, 2009 WL 201142, *2 (Jan. 29, 2009). Other courts have concluded that a driver must stop *before* any part of his or her vehicle crosses a clearly marked stop line. *See, e.g.*, *People v. Wood*, 379 Ill.App.3d 705, 708-709 (2008); *U.S. v. Mack*, D.Vt. No. 5:14-cr-28, 2014 WL 7140604, *8, fn. 6 (Dec. 12, 2014); *U.S. v. Smith*, M.D.Fla. No. 2:06-cr-42-FtM-29SPC, 2006 WL 2226313, *7 (Aug. 3, 2006); *State v. Daniels*, 158 So.3d 629, 630-631 (Fla.2014); *People v.*

*Binkowski*, 157 Cal.App.4th Supp. 1, 6 (2007); *State v. Denner*, 298 Wis.2d 249, 726 N.W.2d 357, ¶ 7, fn. 2 (2006). Although this court has not specifically defined what it means to stop at a clearly marked stop line, we previously affirmed a stop-sign violation in *State v. Rannes* where the arresting officer testified that Rannes "'made an improper stop'" because "she 'went past the clearly marked stop line in the roadway'" and assumed in *State v. Aldridge* that Aldridge's failure to "stop before a marked stop line" was a violation of R.C. 4511.43(A) to justify the arresting officer's stop and detention of Aldridge. *State v. Rannes*, 3d Dist. Logan No. 8-02-12, 2002-Ohio-4691, ¶ 39-40; *Aldridge*, 2014-Ohio-4537, at ¶ 2, 5, 10.

**{¶19}** Because we conclude that the statute is unclear and ambiguous, we must apply the principles of statutory interpretation to determine what R.C. 4511.43(A) requires of a motorist. *See Black*, 142 Ohio St.3d 332, 2015-Ohio-513, at ¶ 45. To determine the General Assembly's intent, we will consider the consequences of a particular construction of the statute, the object sought to be obtained by the statute, and the administrative construction of the statute. R.C. 1.49(A), (E), (F).

**{¶20}** We conclude that the General Assembly did not contemplate that stopping astride—where any portion of a vehicle extends across—a clearly marked stop line would constitute compliance with R.C. 4511.43(A) and hold that

a motorist must stop his or her vehicle before the front-most portion of the vehicle breaks the plane of the outermost edge of a clearly marked stop line. In other words, to comply with the statute, a motorist must stop his or her vehicle before any portion of his or her vehicle crosses the edge of the stop line that is furthest from the front-most portion of his or her approaching vehicle.

{¶21} First, the consequences of interpreting "at" under R.C. 4511.43(A) to permit a motorist to stop on or near a clearly marked stop line does not readily further any legislative purpose because "[i]f a vehicle stops 'at' the stop line by straddling it, the line does *not* mark a definite stopping point; it marks a range of stopping points that varies with the length of a particular vehicle involved." (Emphasis added.) *Wood*, 379 Ill.App.3d at 709. In crafting R.C. 4511.43(A), it is illogical that the General Assembly would want to establish a range of stopping points for a motorist as opposed to a definite stopping point. This point is best described by the Illinois Court of Appeals in *Wood*:

> In the case of a relatively small passenger automobile, it may not make much difference, in terms of road safety, whether the vehicle stops behind the line or astride it. However, the vehicles that travel on * * * roads come in all shapes and sizes. The trial court's interpretation becomes significantly more problematic if applied to a 40-foot-long bus that could project well into an intersection before

its rear wheels reach the stop line. Under the trial court's interpretation of the applicable statutes, the bus would have made a proper stop.

*Id.* *See also Binkowski*, 157 Cal.App.4th Supp. at 6 (concluding that the California legislature "could not have intended such an absurd—and potentially perilous—result" if the court interpreted the stop-sign statute to permit a motorist to stop astride a clearly marked stop line). In addition, interpreting "at" under R.C. 4511.43(A) in this manner could result in an unconstitutional disparate application of the statute since it could be applied differently to motorists depending on the size or length of the vehicle they are operating. *See, e.g.*, *State ex rel. Patterson v. Indus. Comm.*, 77 Ohio St.3d 201, 204 (1996) (discussing the constitutional guarantee "that all similarly situated individuals be treated in a similar manner").

**{¶22}** Moreover, the object sought to be attained in regulating Ohio's highways is the safety of motorists and pedestrians. Interpreting "at" under R.C. 4511.43(A) to permit a motorist to stop on or near a clearly marked stop line does not further that purpose. In *Daniels*, the Florida Court of Appeals concluded that the stop-sign statute at issue in that case requires a motorist to stop before any part of his or her vehicle "crosses the line" because "[a] stop line protects other motorists and pedestrians only if a vehicle stops when its front bumper reaches that line." *Daniels*, 158 So.3d at 631. In making that conclusion, the Florida

Court of Appeals acknowledged that the purpose of a stop-sign statute is "to require a vehicle to stop before it is in a position where it could impede or hit pedestrians who might be in a crosswalk, or cross-traffic that could be in an intersection." *Id.* In addition, stop lines are often used to protect other motorists by providing a point at which a vehicle must stop to allow ample room for large vehicles to complete turns at an intersection. As a result, we interpret the statute to require a motorist to stop prior to the point at which the front-most portion of his or her vehicle will break the plane of the outermost edge of the clearly marked stop line to most readily further the General Assembly's purpose in enacting R.C. 4511.43(A).

{¶23} Further support that the General Assembly did not contemplate that stopping astride a clearly marked stop line would constitute compliance with R.C. 4511.43(A) can be found in the administrative construction of the statute. In particular, the Ohio Manual of Uniform Traffic Control Devices (OMUTCD), which provides the official specifications for highway signs and markings as mandated by R.C. 4511.09, supports our holding. *See State v. Phillips*, 3d Dist. Logan No. 8-04-25, 2006-Ohio-6338, ¶ 25, 30-31 (consulting the OMUTCD for statutory-construction purposes), *abrogated on other grounds by Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, at ¶ 15; *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 4 (noting that the OMUTCD was adopted by the Ohio

Department of Transportation under R.C. 4511.09). Specifically, the OMUTCD describes the use of a "stop line": "Stop lines should be used to indicate the point *behind* which vehicles are required to stop, in compliance with a traffic control signal." (Emphasis added.) OMUTCD, Section 3B.16 (2012 Ed.).

{¶24} Therefore, we conclude that it is unlawful to stop astride a clearly marked stop line, and that a motorist must stop his or her vehicle prior to the point at which the front-most portion of his or her vehicle will break the plane of the outermost edge of that clearly marked stop line.

{¶25} Based on that conclusion, we hold that Trooper Beynon had probable cause to stop Miller since Miller stopped his vehicle astride a clearly marked stop line. *See Mays* at ¶ 23, 24; *Haas*, 2012-Ohio-2362, at ¶ 23. Furthermore, since we hold that Trooper Beynon had probable cause to stop Miller based on his violation of R.C. 4511.43(A), we also hold that the exclusionary rule does not apply. Too, we need not analyze the State's alternative argument—whether Trooper Beynon possessed a reasonable articulable suspicion to stop Miller based on a reasonable mistake of law under *Heien*. *See* 135 S.Ct. at 539.

{¶26} For the reasons stated above, the trial court erred in granting Miller's motion to suppress.

{¶27} The State's assignment of error is sustained.

{¶28} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**